*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

No. 05-3140

JAMES L. WHEELER,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 03-00739—David A. Katz, District Judge.

Argued: April 24, 2008

Decided and Filed: August 1, 2008

Before: DAUGHTREY, GILMAN, and ROGERS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Gary W. Crim, LAW OFFICE, Dayton, Ohio, for Appellant. Joseph R. Wilson, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee. **ON BRIEF:** Gary W. Crim, LAW OFFICE, Dayton, Ohio, for Appellant. Joseph R. Wilson, Ava M. Rotell Dustin, ASSISTANT UNITED STATES ATTORNEYS, Toledo, Ohio, for Appellee.

---

**OPINION**

---

ROGERS, Circuit Judge. This case is part of a consolidated appeal involving thirteen defendants who were members of the Outlaw Motorcycle Club ("OMC"), an international motorcycle club with chapters across the country and around the world. In 1997, the Federal Bureau of Investigation and state law enforcement agencies began an investigation into the Green region of the OMC, which consists of chapters in Dayton, Ohio; Fort Wayne, Indiana; Louisville, Kentucky; Indianapolis, Indiana; and Oklahoma City, Oklahoma. As a result of the investigation, a grand jury in the Northern District of Ohio returned a 40-count indictment in 2003 charging the defendants with various federal offenses, including Racketeer Influenced and Corrupt Organizations Act ("RICO"), drug trafficking, and firearms offenses. The defendants were tried together before an anonymous jury.

Defendant James "Frank" Wheeler was formerly the head of the Indianapolis chapter and Green region of the OMC. Wheeler later served as president of the entire international OMC organization. Following trial, Wheeler was convicted on one count of substantive RICO, in

1

violation of 18 U.S.C. § 1962(c), one count of RICO conspiracy, in violation of 18 U.S.C. § 1962(d), and one count of conspiracy to possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846. On January 5, 2005, Wheeler was sentenced to life imprisonment on the substantive RICO and drug conspiracy counts, to run concurrently, and to 20 years' imprisonment on the RICO conspiracy count, to run consecutively.

Wheeler raises two issues on appeal: (1) that his indictment for the substantive RICO, RICO conspiracy, and drug conspiracy offenses violated the Double Jeopardy Clause because of an earlier prosecution; and (2) that his sentence was improperly imposed for various reasons.[1] Because Wheeler's indictment for the substantive RICO and RICO conspiracy offenses violated the Double Jeopardy Clause, we reverse those convictions and sentences. We affirm, however, Wheeler's conviction and sentence for the drug conspiracy.

## I.

Prior to the instant prosecution in the Northern District of Ohio, Wheeler was indicted in the Middle District of Florida for offenses that stemmed from his association with the OMC. The Florida indictment consisted of six counts, four of which charged one substantive RICO count under 18 U.S.C. § 1962(c), one RICO conspiracy count under 18 U.S.C. § 1962(d), and two counts of drug conspiracy under 21 U.S.C. § 846. Though Wheeler was convicted of the substantive RICO and RICO conspiracy offenses, he was acquitted on one drug conspiracy count (Count 3) and the second drug conspiracy count was dismissed (Count 4).

Subsequent to his indictment in Florida, a grand jury returned the instant indictment against Wheeler in the Northern District of Ohio, charging Wheeler with one count each of substantive RICO (Count 1), RICO conspiracy (Count 2), drug conspiracy (Count 3), and firearms conspiracy under 18 U.S.C. § 924(o) (Count 4). Based on the Florida prosecution, Wheeler filed a motion in the district court contending that his indictment in Ohio for the substantive RICO, RICO conspiracy, and drug conspiracy offenses placed him in jeopardy twice for the same crimes. After hearing oral argument, the district court denied Wheeler's motion, concluding that each indictment charged Wheeler with separate crimes. Following trial, Wheeler was found guilty of the substantive RICO, RICO conspiracy, and drug conspiracy offenses, but acquitted of the firearms conspiracy. On appeal, Wheeler again claims that double jeopardy precluded his prosecution in Ohio for both RICO offenses and the drug conspiracy offense. We review these claims de novo. *United States v. Dakota*, 197 F.3d 821, 826 (6th Cir. 1999).

## II.

Because Wheeler was placed in jeopardy twice for the same substantive RICO and RICO conspiracy crimes, we vacate those convictions. *See* U.S. Const. Amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb"). In *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983), this court set out a "totality of the circumstances" test to address a double jeopardy claim in the context of successive RICO conspiracy prosecutions. The test consisted of five factors: "(1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place." *Id.* The *Sinito* court explained that "[w]here several of these factors differ

---

[1] In his brief, Wheeler also incorporated by reference two arguments raised in the brief of his co-defendant John Walker. We find no merit to those arguments for the reasons given in *United States v. Walker*, No. 04-4478, __ WL __ (6th Cir. 2008).

between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses." *Id.* at 1256-57.

Although *Sinito* did not involve a successive prosecution for the substantive RICO offense, a similar analysis should be applied, as other courts have recognized. In *United States v. Russotti*, 717 F.2d 27, 32-33 (2d Cir. 1983), the Second Circuit faced the question of whether a successive prosecution for both the substantive RICO offense and the RICO conspiracy offense violated the Double Jeopardy Clause. The court determined that double jeopardy is implicated in successive RICO prosecutions only if both the enterprise and the pattern of racketeering activity alleged in each indictment are the same. The court explained that

> it is neither the enterprise standing alone nor the pattern of racketeering activity by itself which RICO criminalizes. Rather, the *combination* of these two elements is the object of punishment under RICO. Therefore, in order for the present indictment to give rise to a valid claim of double jeopardy, *both* the enterprise and the pattern of activity alleged in the [previous] indictment must be the same as those alleged in the [instant] indictment.

*Id.* at 33 (citations omitted); *see also United States v. DeCologero*, 364 F.3d 12, 18 (1st Cir. 2004) ("Every circuit to have examined the issue has agreed that double jeopardy only bars successive RICO charges involving both the same enterprise *and* the same pattern of racketeering activity."). In evaluating whether the pattern of racketeering activity alleged in each indictment was the same, the Second Circuit adopted a five factor "totality of the circumstances" test similar to the test set out in *Sinito*: "(1) the time of the various activities charged as parts of separate patterns; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge." *Russotti*, 717 F.2d at 33 (quoting *United States v. Dean*, 647 F.2d 779, 788 (8th Cir. 1981)). The court noted that the fourth factor is "most significant." 717 F.2d at 34.

In this case, both Wheeler and the government agree that the same enterprise was implicated in the Florida and Ohio RICO prosecutions. Indeed, both indictments alleged that Wheeler and others engaged in a pattern of racketeering activity through the OMC enterprise. Thus, the only question this court must address is whether each indictment charged the same pattern of racketeering activity. And because the *Sinito* test essentially mirrors the five-factor test expressed in *Russotti*, Wheeler's double jeopardy arguments for both the substantive RICO offense and the RICO conspiracy offense can be analyzed at the same time. For the reasons stated below, the *Sinito* and *Russotti* factors indicate that Wheeler was indicted for the same "pattern of racketeering activity" in the Florida and Ohio prosecutions. Accordingly, Wheeler's substantive RICO and RICO conspiracy charges unconstitutionally placed him in double jeopardy.

With respect to the first factor, the time periods covered by the two indictments overlap significantly. The Florida indictment alleged conduct occurring between 1990 and 2004, and the Ohio indictment alleged conduct occurring between 1988 and 2003. It is true, as the government argues, that much of the conduct alleged of Wheeler in the Florida indictment occurred between 1994 and 1995. Conversely, the Ohio indictment charged Wheeler with racketeering acts that generally occurred between 2000 and 2002. Even so, Racketeering Act 16 in the Florida indictment charged Wheeler with conduct that occurred in 2002, the year that Wheeler also allegedly committed Racketeering Act 15 of the Ohio indictment. And Racketeering Act 1(A) of the Ohio indictment charged a drug conspiracy—of which Wheeler was alleged to be part—that began in 1990 and carried through to the time of the indictment, April 2003. This time period obviously includes 1994 and 1995, the years that much of the conduct alleged of Wheeler in the Florida indictment took place. Finally, for purposes of the RICO conspiracy convictions, many of the predicate acts

allegedly perpetrated by Wheeler's co-conspirators in the Ohio indictment occurred during the same time period as the predicates alleged in the Florida indictment. For example, Racketeering Acts 9 and 10 of the Florida indictment and Racketeering Acts 27 and 28 of the Ohio indictment all involve the same incident, which occurred in October 1994.

Whether the second factor—the identity of the persons involved in the activities charged under each indictment—weighs in favor of a double jeopardy violation is less clear. The government argues that the Florida indictment charges only Wheeler and does not charge the other persons indicted as Wheeler's co-conspirators in the Ohio case. But this argument fails to address the issue completely. Although the government is correct that only Wheeler was charged in the Florida indictment, the relevant question under the second factor is not whether the same persons were actually charged in each indictment, but rather whether the same persons were involved in the activities charged under each indictment, unindicted persons included. *See, e.g.*, *DeCologero*, 364 F.3d at 19 (noting that at least one defendant from the current case may have been an unindicted co-conspirator in the earlier case). Consequently, the inquiry here extends beyond mere consideration of those actually indicted in each prosecution.

Although many of the racketeering acts charged in the Florida indictment alleged that Wheeler conspired with other individuals, it is not clear from the face of that indictment who besides Wheeler participated in the RICO activities alleged of Wheeler in Florida. A bill of particulars filed in the Florida case is somewhat helpful in this regard. In that bill, the government listed Wheeler's co-conspirators for purposes of Count 4 of the Florida indictment. Count 4 charged Wheeler with conspiring to traffic in cocaine and methamphetamine. Among the co-conspirators listed in the bill of particulars were twenty-one of the thirty-eight co-defendants charged in the instant Ohio case. While these co-conspirators were listed in connection with an offense separate from the substantive RICO and RICO conspiracy counts in the Florida indictment, Racketeering Act 17 of that same indictment—a predicate act alleged in connection with the RICO counts—alleged a drug conspiracy similar to, and occurring during the same time period, as the drug conspiracy alleged in Count 4.[2] From this, an inference can be drawn that at least some of the persons involved in the Count 4 activity were also involved in Wheeler's RICO activity for purposes of the Florida indictment. And because twenty-one of Wheeler's Ohio co-coconspirators were implicated as co-conspirators for purposes of Count 4 of the Florida indictment, a further inference can be drawn that the Ohio RICO prosecution involves some of the same persons who were also involved in the RICO conduct charged against Wheeler in Florida.

---

[2]Racketeering Act 17 alleged:

> From in or about January 1990 through in or about November 1997, in the Middle District of Florida, the Eastern District of Michigan, the Southern District of Indiana, and elsewhere, the defendant, JAMES LEE WHEELER a/k/a Frank Wheeler, did knowingly, intentionally, and willfully combine, conspire, confederate and agree with persons both known and unknown to the grand jury, to possess with intent to distribute and distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine and a quantity of methamphetamine, schedule II controlled substances, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and (C), in violation of Title 21, United States Code, Section 846.

Count 4 alleged:

> From in or about 1990 through in or about November 1997, in the Middle District of Florida and elsewhere, the defendant, JAMES LEE WHEELER a/k/a Frank Wheeler, did knowingly and intentionally combine, conspire, confederate and agree with other persons who are both known and unknown to the grand jury, to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine and a quantity of methamphetamine, Schedule II Controlled Substances, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and (C). All in violation of Title 21, United States Code, Section 846.

Strengthening this inference, to some extent, are Racketeering Acts 9 and 10 of the Florida indictment and Racketeering Acts 27 and 28 of the Ohio indictment. These racketeering acts involve the same event, a bombing and attempted bombing of the clubhouse of the Sons of Silence, a rival motorcycle club. According to both indictments, this conduct occurred in October 1994. Although Wheeler was charged with the Sons of Silence bombing in the Florida indictment, he was not charged with that incident in the Ohio indictment. Instead, OMC member David Mays was charged with the Sons of Silence incident in the Ohio indictment. The fact that both Wheeler and Mays were connected to this incident across indictments establishes that at least one Ohio co-conspirator was in fact a common participant in Wheeler's Florida and Ohio activities. The record therefore establishes that there is some commonality with respect to the persons involved in the RICO activities charged in each indictment.

Under the third factor, the record indicates a significant overlap between the statutory offenses charged as racketeering acts for both substantive RICO and RICO conspiracy in each indictment. In the Florida indictment, Wheeler was charged with racketeering acts involving the following statutory offenses: extortion and conspiracy to commit extortion in violation of Fla. St. §§ 836.05, 777.011, 777.04; conspiracy to commit murder in violation of Ind. Code §§ 35-41-5-2, 35-42-1-1; distribution of cocaine in violation of 21 U.S.C. § 841(a)(1); possession of a stolen motor vehicle in violation of 18 U.S.C. § 2313; conspiracy to commit murder and aiding and abetting murder in violation of N.Y. Penal Law §§ 125.25, 105.15, 20.00; arson and attempted arson in violation of Ind. Code §§ 35-43-1-1, 35-41-5-1, 35-41-2-4; traveling in interstate commerce with the intent to carry on an unlawful activity in violation of the Travel Act, 18 U.S.C. § 1952; arson and conspiracy to commit arson in violation of Fla. St. §§ 777.04, 806.01 and 720 Ill. Comp. St. 5/20-1(a), 5/5-1; extortion in violation of Ind. Code §§ 35-45-2-1, 35-41-2-4; obstruction of justice in violation of 18 U.S.C. § 1503; and narcotics conspiracy in violation of 21 U.S.C. § 846. In the Ohio indictment, Wheeler was charged with racketeering acts involving the following statutory offenses: drug conspiracy in violation of 21 U.S.C. § 846 (Racketeering Act 1(A)); traveling in interstate commerce with the intent to carry on an unlawful activity in violation of the Travel Act, 18 U.S.C. § 1952 (Racketeering Acts 10, 11, 12); and intimidation of a witness/obstruction of justice in violation of 18 U.S.C. § 1512 (Racketeering Acts 13, 14, 15).

With respect to the substantive RICO charges leveled against Wheeler, a comparison of the statutory offenses charged in each indictment indicates that four of the seven racketeering acts that Wheeler was charged with in the Ohio indictment involve statutory offenses that were also charged as racketeering acts in the Florida indictment. Those statutory offenses are 21 U.S.C. § 846 and 18 U.S.C. § 1952. This contrasts with the situation in *DeCologero*, 364 F.3d at 19, in which the First Circuit found no double jeopardy violation, noting that "*all* of the incidents constituting substantive non-RICO crimes and *all* of the RAs in the present indictment are different from those charged in the [previous] case." It also contrasts with *Russotti*, 717 F.2d at 33-34, where the Second Circuit found no double jeopardy violation, noting that "the racketeering activities charged in each indictment have only one point of conjunction." The remaining three racketeering acts alleged of Wheeler in the Ohio indictment involve Wheeler's participation in conduct that obstructed justice—namely, the use of a "voice stress analyzer" to intimidate persons from communicating with law enforcement. Notably, Wheeler was also charged with obstructive conduct in the Florida indictment, though under a different statute (18 U.S.C. § 1503 rather than 18 U.S.C. § 1512), and for conduct related to the harboring and concealing of a fugitive.

As to the RICO conspiracy charges leveled against Wheeler, a comparison of the indictments indicates that the RICO conspiracies alleged in each indictment involve similar predicate offenses. In the Ohio indictment, Wheeler's RICO co-conspirators—like Wheeler in the Florida indictment—were charged with the following statutory predicate offenses: drug conspiracy in violation of 21 U.S.C. § 846 (Racketeering Act 1(A)); distribution of drugs in violation of 21 U.S.C. § 841(a)(1) (Racketeering Acts 2, 3, 4, 5, 6, 7); traveling in interstate commerce with the intent to

carry on an unlawful activity in violation of the Travel Act, 18 U.S.C. § 1952 (Racketeering Acts 10, 12); possession of stolen/fraudulently obtained motor vehicles in violation of 18 U.S.C. §§ 2313, 2314 (Racketeering Acts 17, 18); attempted murder and murder in violation of Ind. St. §§ 35-42-1-1, 35-41-5-1 (Racketeering Acts 23, 24, 26); and arson and attempted arson in violation of Ind. Code §§ 35-43-1-1, 35-41-5-1 (Racketeering Acts 27, 28). Thus, of the twenty-seven racketeering acts charged against Wheeler's co-conspirators in the Ohio indictment, sixteen involved statutory offenses also charged in the Florida indictment. And notably, the remaining eleven predicates allegedly perpetrated by Wheeler's co-conspirators in the Ohio indictment involved conduct related to extortion, wire fraud, obstruction of justice, and murder. With the exception of wire fraud, similar conduct was charged in the Florida indictment, although pursuant to different statutory provisions.

The government acknowledges the substantial overlap in the indictments with respect to the statutory offenses charged as racketeering acts against Wheeler and his co-conspirators. It argues, however, that the overlap is not significant because, generally, the factual bases underlying those charged offenses are dissimilar. The government's argument is not persuasive. The relevant question here is whether Wheeler was charged with the same *pattern* of racketeering activity in each indictment. A showing that different predicate crimes are charged as predicates from one indictment to the next is significant because it tends to prove a different pattern of activity and, accordingly, that the defendant is being punished for different RICO conduct. In contrast, a showing that the same predicate crimes were committed under different factual circumstances only tends to prove that the pattern of activity was more widespread than the initial indictment originally conveyed. It does not tend to prove a separate pattern of conduct.[3] This contrasts with the situation in *DeCologero*, 364 F.3d at 18-19, where the first indictment charged racketeering acts consistent with a pattern of murder, while the second centered on a pattern of robbery and drug trafficking. And in *Sinito*, 723 F.2d at 1258, the first prosecution was based on loansharking while the second prosecution was based on murder, drug trafficking, and illegal gambling. Thus, notwithstanding the different factual bases underlying the predicates charged in each indictment, substantial overlap exists regarding the statutory offenses charged with respect to those predicates.

Fourth, and most significantly, both indictments sought to punish activity of the same nature and scope. The government argues that the Florida indictment is mainly directed at punishing Wheeler's murderous and extortionate activities against rival motorcycle gangs in Florida, while the Ohio indictment is directed against Wheeler's activities in the Green region of the OMC. A simple examination of the indictments, however, reveals that both are directed at activities of the same general nature and scope. First, belying the government's main contention is the fact that the Green region of the OMC was explicitly mentioned in the Florida indictment. This indicates that the government thought that Wheeler's Green region activities were at least somewhat relevant to the Florida prosecution. In any event, an examination of the places where the alleged activities charged in each indictment occurred is more pertinent to the fifth double jeopardy factor, as discussed below.

There is also striking similarity between the overall schemes alleged in the Florida and Ohio indictments. As discussed in connection with the third double jeopardy factor, the indictments charge many of the same statutory offenses as predicates. Moreover, both indictments involve schemes to further the OMC enterprise through violence, narcotics trafficking, extortion, obstruction of justice, and dealing in stolen vehicles. A cursory reading of the "Means and Methods" portions of each indictment reflects this similarity. Of the eighteen "means and methods" listed in the Ohio indictment, seventeen have a corresponding "means and method" in the Florida indictment, and the

---

[3]Of course, if the question here were whether Wheeler was placed in jeopardy twice for the substantive crimes that are listed as predicates in the indictment, the factual bases underlying the charges for those crimes would be relevant. The RICO offense, however, is an offense separate from the offenses charged as predicates.

language used across the indictments in describing the "means and methods" of the enterprise is very similar. This congruity indicates that both indictments are directed at the same pattern of conduct.

Indeed, the congruity between the RICO charges in each indictment becomes even more apparent when Wheeler's case is compared to the *Russotti*, *DeCologero*, and *Sinito* cases. In those cases, it was clear that there were two separate overall criminal schemes alleged in each indictment. In *Russotti*, the court found that there was "plainly no convergence" of the two indictments with respect to the fourth double jeopardy factor because one indictment concerned a scheme to defraud insurance companies by deliberately setting fires to buildings, while the other indictment was directed at a scheme to extort money from gambling clubs and to protect the affairs of the enterprise through threats, murder, arson, and obstruction of justice. *Russotti*, 717 F.2d at 34. In *DeCologero*, the court noted that one indictment charged racketeering acts consistent with a pattern of murder, while the other indictment centered on a pattern of robbery and drug trafficking. *DeCologero*, 364 F.3d at 18-19. In *Sinito*, the court explained that the second indictment indicated a "clear and permissible intent to punish activity divorced from loansharking, which was the sole scope of the first indictment." *Sinito*, 723 F.2d at 1258. In Wheeler's case, by contrast, it is difficult to discern the difference between the two schemes alleged in the indictments. Both indictments are directed at acts of murder, extortion, drug trafficking, obstruction of justice, and possession of stolen motor vehicles. And both indictments allege that these actions were taken to accomplish the purposes of the same enterprise. The nature of the conduct alleged in each indictment is therefore very similar, and the scope of the conduct charged, while perhaps more limited in the Florida indictment, is not significantly different. In sum, the fourth double jeopardy factor strongly indicates that Wheeler was prosecuted for the same pattern of racketeering activity in each indictment.

Lastly, the fifth factor weighs slightly against a double jeopardy violation. The Florida indictment involves conduct that occurred in Florida, Indiana, Michigan, New York, and Illinois. The Ohio indictment alleges conduct that occurred mainly in Ohio and Indiana. Even so, there is some overlap between the indictments in this regard as well. For example, both indictments involve conduct in Indiana and, as discussed earlier, both indictments charge conduct related to the same incident, a bombing and attempted bombing of the Sons of Silence clubhouse in Indianapolis.

Viewed in its totality, the analysis above indicates that Wheeler was indicted in Ohio for the same pattern of racketeering activity that he was previously indicted for in Florida. Most significantly, each prosecution was directed at conduct of a strikingly similar nature and scope. There is very little difference between the criminal schemes alleged in each indictment. Where the indictments also involve an overlap in time period, participants, and statutory offenses charged, the conclusion is inescapable that Wheeler's prosecution in Ohio sought to punish the same pattern of racketeering activity that he was previously prosecuted for in Florida. Because the same enterprise was implicated in each indictment, Wheeler's prosecution in Ohio for the substantive RICO and RICO conspiracy offenses violated the Double Jeopardy Clause. Wheeler's convictions regarding those two offenses must therefore be reversed.

### III.

Wheeler's successive indictment for drug conspiracy, however, does not constitute a double jeopardy violation. As noted above, the government charged Wheeler with drug conspiracy, in violation of 21 U.S.C. § 846, in both the Florida and Ohio indictments (in Count 3 of the Ohio indictment and in Counts 3 and 4 of the Florida indictment). Wheeler was acquitted of the drug conspiracy charge in Count 3 of the Florida indictment, and Count 4 of that indictment was dismissed. In Ohio, Wheeler was convicted of the drug conspiracy charge.

In determining whether successive indictments charge the same drug conspiracy for purposes of double jeopardy, we again apply *Sinito*'s five-factor test. Application of the *Sinito* factors

indicates that Wheeler's prosecution in Ohio for drug conspiracy did not run afoul of the Double Jeopardy Clause. Although the conspiracies were charged under the same statute (21 U.S.C. § 846), and the statutory offense underlying each conspiracy charge was the same (21 U.S.C. § 841(a)), the factors nonetheless indicate that Wheeler was charged in Ohio for an agreement separate from the agreements charged in the Florida indictment. As the Eighth Circuit held in *United States v. Ledon*, 49 F.3d 457, 460 (8th Cir. 1995), even if "the statutory offenses charged are the same, . . . in context with the other factors, this is a minor point, since one can certainly enter two conspiracies to commit the same type of crime."

The drug conspiracy charged in Count 3 of the Florida indictment is separate from the drug conspiracy charged in the Ohio indictment. First, the time covered by both conspiracies differs significantly. The Florida indictment charged a conspiracy beginning in 2002, while the Ohio indictment charged conduct beginning in 1990 and carrying through the time of the indictment, April 2003. The Ohio indictment thus charged Wheeler with participation in a drug conspiracy that endured for a much longer period of time than the conspiracy charged in Count 3 of the Florida indictment. Second, the charged conspiracies involved different participants. For purposes of Count 3 of the Florida indictment, the government named as Wheeler's co-conspirators Dennis Pelligrini, Greg Driver, and Roy Eugene Edwards. In the Ohio indictment, the government alleged thirty-four co-conspirators in the drug conspiracy count, and only Driver was alleged to have participated in both conspiracies. With respect to the fourth and most significant factor, the scope and nature of the conduct charged in each count is dissimilar. Count 3 of the Florida indictment charges a limited drug conspiracy between Wheeler and two others that involved only cocaine. The Ohio conspiracy charges a wide-ranging conspiracy between Wheeler and thirty-four other persons, with almost 300 overt acts charged. Moreover, in addition to cocaine, the Ohio conspiracy involved the distribution of methamphetamine, LSD, marijuana, ecstasy, and valium. Regarding the fifth factor, each indictment charges conduct that occurred in different places. Count 3 of the Florida indictment involved conduct that occurred mainly in Florida and Michigan, while the Ohio indictment alleged conduct that generally occurred in Ohio, Kentucky, and Indiana (though a few of the overt acts listed allegedly occurred in Florida and Michigan as well). In combination, these factors indicate that Count 3 of the Florida indictment charged a conspiracy separate from the conspiracy charged in the Ohio indictment.

Though a closer call, we conclude that the conspiracy charged in Count 4 of the Florida indictment was also a conspiracy separate from the conspiracy charged in the Ohio indictment.[4] First, although the time periods charged for each conspiracy overlap, Count 4 of the Florida indictment charged a conspiracy of a significantly shorter duration. That count alleged a conspiracy beginning in 1990 and ending in or about November 1997. The Ohio indictment, by contrast, alleged a conspiracy beginning in 1990 and carrying through to the time of the indictment, April 2003. This aspect compares with the Eighth Circuit's holding in *Ledon*, 49 F.3d at 460, that two separate conspiracies existed when the second conspiracy continued three and a half years after the end of the first conspiracy. In fact, for purposes of the Ohio indictment, Wheeler was implicated in overt acts occurring as late as December 2001, four years after the conspiracy in Florida allegedly ended. Under the second factor, there is admittedly some overlap among the co-conspirators alleged in Count 4 of the Florida indictment and the co-conspirators alleged in the Ohio indictment. Of the thirty-four co-conspirators alleged in the Ohio indictment, twenty were named as co-conspirators in the bill of particulars for Count 4 of the Florida indictment. Even so, the Florida bill of particulars named eighteen co-conspirators that were not named in the Ohio indictment, and fourteen of the co-

---

[4]Count 4 of the Florida indictment was dismissed and thus not tried to verdict. Wheeler asserts, however, that Count 4 was not dismissed until after jeopardy attached. The record is not clear on this point and the government offers no response in its brief. We therefore assume for purposes of our analysis that jeopardy attached to Count 4 prior to its dismissal.

conspirators listed in the Ohio indictment were not named in the Florida bill of particulars. Thus, the conspiracies do not completely overlap with respect to participants.

With respect to the fourth, and most significant factor, the scope of the activity that the government sought to punish under each conspiracy charge is different. Count 4 of the Florida indictment alleged that Wheeler and his co-conspirators combined and conspired to distribute 5 kilograms or more of a mixture containing a detectable amount of cocaine and a quantity of methamphetamine. The Ohio indictment, on the other hand, sought to punish not only the distribution of cocaine and methamphetamine, but also the distribution of LSD, marijuana, ecstacy, and valium. Thus, the Ohio indictment charged a conspiracy of a wider scope and of a different nature than the conspiracy charged in Count 4 of the Florida indictment. The Eighth Circuit, in *United States v. Aguilera*, 179 F.3d 604, 608-09 (8th Cir. 1999), similarly concluded that two separate conspiracies were charged when the first conspiracy involved one instance of marijuana distribution and the second conspiracy involved multiple shipments of cocaine and methamphetamine. Finally, each count charged conduct that generally occurred in different places. Count 4 of the Florida indictment involved conduct that occurred in "the Middle District of Florida and elsewhere," while the Ohio indictment alleged conduct that for the most part occurred in Ohio, Kentucky, and Indiana (though a few of the overt acts listed in the Ohio indictment allegedly took place in Florida).

In sum, the totality of the circumstances indicates that Wheeler's indictment for the drug conspiracy in Ohio did not violate the Double Jeopardy Clause. With respect to Count 3 of the Florida indictment, four of the five *Sinito* factors indicate that the conspiracies charged were separate. With respect to Count 4, though there is some overlap between the co-conspirators allegedly involved in each conspiracy, the conduct that the government sought to punish in the Ohio indictment was of a scope and nature different from the conduct charged in the Florida indictment. Additionally, the conspiracy charged in the Ohio indictment was of a longer duration and generally implicated different geographical locations. These factors indicate that the Ohio indictment charged Wheeler with an agreement separate from those alleged in the Florida indictment. Wheeler's drug conspiracy conviction therefore did not violate the Double Jeopardy Clause.

## IV.

Although Wheeler raised various sentencing arguments on appeal, we need not address those arguments in light of our determinations above. Wheeler was sentenced to life imprisonment on the substantive RICO and drug conspiracy convictions, to run concurrently, and to 20 years' imprisonment on the RICO conspiracy conviction, to run consecutively. In accordance with our determination that Wheeler's RICO convictions must be reversed, we vacate his sentences for those two convictions. We affirm, however, Wheeler's life sentence for the drug conspiracy. That sentence was properly imposed pursuant to 21 U.S.C. § 841(b)(1)(A), which provides for a mandatory life sentence if the defendant has two or more prior convictions for a felony drug offense. In turn, 21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." In his brief, Wheeler does not contest the imposition of the mandatory life sentence under § 841(b)(1)(A), or that he had two qualifying prior felony drug convictions. His sentencing arguments relate instead to *Booker*, the Sixth Amendment, and reasonableness. Because the district court was bound to impose the mandatory life sentence for the drug conspiracy conviction, any sentencing error would be harmless, as Wheeler cannot receive a sentence lower than the statutory minimum. *Cf. United States v. Joiner*, 123 F. App'x 681, 683 (6th Cir. 2005).

**V.**

For the foregoing reasons, we reverse Wheeler's convictions and sentences for the substantive RICO and RICO conspiracy offenses and affirm Wheeler's conviction and sentence for the drug conspiracy.