NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0561n.06

Case No. 09-5959

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 31, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| v. | ) | **COURT FOR THE EASTERN** |
| | ) | **DISTRICT OF KENTUCKY** |
| PAUL LINVILLE BARGO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Circuit Judge; SILER and COLE, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.** Paul Bargo appeals his conviction and sentence based on the theoretical yield of methamphetamine from a proven quantity of pseudoephedrine. He also appeals his conviction based on a challenge to venue. We affirm.

**I.**

Paul Bargo was in the business of "cooking" methamphetamine ("meth") from pseudoephedrine and selling it. The government caught him and charged him with 17 counts relating to this activity. Only two of those counts are pertinent here, and both stem from a single incident.

On February 12, 2008, an undercover detective and a confidential informant met with Bargo at a Love's Truck Stop. They gave Bargo 108 boxes of Sudafed, containing 103.68 grams of pseudoephedrine, on agreement that Bargo would repay with half of the methamphetamine he manufactured. Bargo boasted that he was the best meth cook ever and promised to produce "three or four ounces" of meth. Three to four ounces is approximately 84 to 112 grams.

Police arrested Bargo and charged him with — among numerous other things — "possession of pseudoephedrine for the manufacture of meth" in violation of 21 U.S.C. § 841(c)(2), and "attempt to manufacture 50 grams or more of methamphetamine" in violation of 21 U.S.C. § 846 and § 851. Bargo entered not guilty pleas on these charges and the case was tried to a jury.

At trial, the government produced witnesses to testify about Bargo's manufacture and distribution of meth, including the undercover officer and the confidential informant, who testified about the Love's Truck Stop transaction and Bargo's promise of three to four ounces (84 to 112 grams). The government also produced a chemist as an expert witness who testified that the theoretical yield of 103.68 grams of pseudoephedrine would be 95.45 grams of meth. In defense, Bargo produced an expert toxicologist and pharmacologist named Dr. Terry Miller who testified that 95.45 grams was an unrealistically high "perfect" conversion and insisted that a proper estimate would be 27.16 grams (26%). Dr. Miller relied on a table in a paper written by Nila Bremmer and Robin Woolery of the Division of Criminal Investigation Laboratory, Des Moines, Iowa,[1] and called the paper the "best article available in this field, the most extensive," and "the very best study available." The defense rested its case and the government then called Nila Bremmer (author of the aforementioned article) as a rebuttal witness. She essentially destroyed Dr. Miller's testimony and his credibility, stating that his "calculation does not correlate with anything I recognize."

---

[1] In the Bremmer-Woolery article, the authors reported actual yields obtained using a variety of "recipes" given to them by actual clandestine meth cooks. The lowest yield in that table was 4% purity and the highest 48%. Dr. Miller asserted that the midpoint (i.e., 26%) would be the best estimate for this case, which gave 27.16 grams. The 4% to 48% range gave an estimated range of 4.65 to 50.29 grams for this case.

The jury convicted Bargo on both counts: possession of pseudoephedrine and attempt to manufacture 50 grams or more of meth. In calculating the advisory sentencing guidelines for Count 5 (attempt), the court used 95.45 grams as the amount of meth, converted it to marijuana equivalent, and added that to the rest of the marijuana equivalent to find the base offense level in the drug quantity table. But after completing that exercise, the court sentenced Bargo to life imprisonment, the mandatory sentence prescribed by statute. *See* 21 U.S.C. §§ 841(b)(1)(A) and 851 (imposing a mandatory sentence on a defendant with two prior drug convictions).

## II.

## A.

Bargo argues that the theoretical yield of 95.45 grams was too high — that, in reality, 103 grams of pseudoephedrine would not produce 50 grams or more of meth and, therefore, the evidence was insufficient to prove the attempt charge. "To convict a person of an attempt to commit a drug offense, the Government must establish two elements: (1) the intent to engage in the proscribed criminal activity; and (2) the commission of an overt activity that constitutes a substantial step toward commission of the crime." *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998). The government produced witnesses — an undercover police officer and a confidential informant — who testified that Bargo boasted that he was the best meth cook and had promised to produce "three or four ounces" (i.e., 84 to 112 grams) of meth from the pseudoephedrine they delivered. This was sufficient to support the jury's finding that Bargo had completed the attempt charge.

**B.**

Bargo argues that the district court erred by using 95.45 grams as the amount of meth to be converted to marijuana equivalent for purposes of calculating his advisory guideline range. Bargo is correct, though his analysis is not and his claim is ultimately futile.

In calculating Bargo's guidelines range, the district court converted the 103.68 grams of pseudoephedrine to 95.45 grams of meth (based on the expert's yield), converted that to 1,909 kilograms of marijuana equivalent (pursuant to the guidelines), added that to the rest of the marijuana equivalent (from the other crimes) for a total of 3,691 kilograms of marijuana equivalent, and set the base offense level at 34, based on the § 2D1.1(c)(3) Drug Quantity Table.

But the applicable Guideline, U.S.S.G. § 2D1.1, has a commentary note for a situation such as this (Comment 10.E) that instructs the court to convert one gram of pseudoephedrine to ten kilograms of marijuana equivalent. *See United States v. Martin*, 438 F.3d 621, 625 (6th Cir. 2006) (considering this comment). Applying this note results in 1,037 kg of marijuana equivalent in this case. When added to the other marijuana equivalent, this gives 2,189 kg total, which corresponds to a base offense level of 32. So, the court's calculation of 34 was error.

But Bargo's conviction was subject to a statutory mandatory term of life imprisonment. And a defendant cannot contest the reasonableness of a mandatory life sentence. *United States v. Wheeler*, 535 F.3d 446, 458 (6th Cir. 2008) ("Because the district court was bound to impose the mandatory life sentence for the drug conspiracy conviction, any sentencing error would be harmless, as Wheeler cannot receive a sentence lower than the statutory minimum."). This claim fails.

**C.**

Bargo contends that the government did not establish the location of the Love's Truck Stop where the pseudoephedrine transaction occurred and, therefore, did not establish venue. But Bargo did not raise this issue in the district court and thus failed to preserve it for appellate review. *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). This claim also fails.

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.