**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0369n.06

No. 17-5377

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | **FILED** |
| v. | ) | Jul 24, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| FREDDIE B. KENNEDY, JR., | ) | |
| | ) | ON APPEAL FROM THE |
| Defendant-Appellant. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| | | DISTRICT OF KENTUCKY |

BEFORE: SILER, MOORE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Freddie Kennedy's tale is, in part, unfortunately a common one playing out during the opioid crisis. He trafficked oxycodone in Kentucky, paying others to obtain prescriptions for the narcotic from unprincipled doctors and to get the prescriptions filled at pharmacies. The tale is also one not unfamiliar to him—he pleaded guilty to conspiring to distribute the drug from 2011 to March 2013 in violation of 21 U.S.C. §§ 841(a)(1), 846.

For present purposes, his tale picks up a month later. From April 2013 through June 2015, Kennedy ran a second opioid-trafficking ring. This ring was bigger than the first—it involved different (and more) co-conspirators, and different (and more) pain clinics, and different (and more) states.

The second ring's scale was not the only differentiating factor. Kennedy used his control over his co-conspirators—many of whom were addicts—to gain access to their children. He then repeatedly sexually abused at least four minor females and threatened to kill them if they told anyone. And even when some did tell, their parents did not believe them, perhaps as a perverse self-justification to ensure continued access to Kennedy's readily available drug supply.

A jury convicted Kennedy of one count of conspiracy to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1), 846; seven counts of crossing a state line with the intent to engage in sex acts with a minor under twelve years old in violation of 18 U.S.C. § 2241(c); and ten counts of transportation and attempted transportation of a minor with the intent to engage in criminal sexual activity of 18 U.S.C. § 2423(a) and (e). The district court imposed a total of four consecutive life sentences. Kennedy raises a myriad of challenges to his convictions and sentence. We affirm.

I.

Two of Kennedy's claims of appeal relate to the Constitution's Double Jeopardy Clause, which provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause protects "against a second prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense." *United States v. Turner*, 324 F.3d 456, 461 (6th Cir. 2003) (citation omitted). Kennedy raises claims under each of these protections.

A.

Defendant first contends the district court erred in denying his motion to dismiss his drug conspiracy charge, which we review de novo. *United States v. Wheeler*, 535 F.3d 446, 449 (6th Cir. 2008). He argues the charged conduct in the operative indictment was the same conduct to

which he had previously pleaded guilty; in his view, from 2011 to 2015 he broadly led just one conspiracy to distribute oxycodone, and thus punishing him again violates double jeopardy.

In conspiracy cases, "it is the agreement which forms the nucleus of the offense." *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983). "A single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies." *United States v. Broce*, 488 U.S. 563, 570–71 (1989). We have developed a five-factor "totality of the circumstances" test to determine whether a defendant engaged in one overarching conspiracy or separate conspiracies:

> The test requires the trial court, in determining whether two conspiracies arise from a single agreement, to consider the elements of: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place.

*Sinito*, 723 F.2d at 1256. These factors assist in answering the ultimate question: "whether the evidence shows one agreement or more than one agreement." *In re Grand Jury Proceedings*, 797 F.2d 1377, 1380 (6th Cir. 1986).

*Time*. The alleged separate conspiracies did not coexist—the first ran, as Kennedy admitted when he pleaded guilty to his first conviction, until March 2013 and the second began a month later in April 2013—and thus the factor weighs in the government's favor.

*Persons*. At best, the commonality between the casts of co-conspirators is miniscule. The first conspiracy involved just three people: defendant, his son, and one other individual. The second conspiracy was much larger; it included many new alleged co-conspirators, none of whom the government alleged were involved in the first conspiracy. Yet defendant says there is sufficient overlap, pointing to (1) the government interviewing his son while investigating the second alleged

conspiracy and (2) an informant's participation in purchasing pills for Kennedy during both conspiracies. But as the district court reasoned, these facts do not tip the scales in Kennedy's favor—an interview of a potential suspect, alone, makes not a conspiracy, and the informant's "minor role" as a drug purchaser did not elevate him to a "central character" normally required to link conspiracies. *See United States v. Meda*, 812 F.3d 502, 509 (6th Cir. 2015).

*Offenses charged in the indictment*. As each indictment charged Kennedy with the same statutory offense (conspiracy to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1), 846), this factor weighs in Kennedy's favor.

*Nature of the activity*. We have characterized this factor as the "most significant," *Wheeler*, 535 F.3d at 450 (citation omitted), and here it weighs heavily in the government's favor. Take the participation of one of the new co-conspirators, Donna Sexton. During the second charged conspiracy, Sexton often acted as the intermediary between Kennedy and other co-conspirators— or, in the district court's words, a "manager." But Sexton played no role in the first conspiracy. And, although the second charged conspiracy involved directing others to purchase oxycodone, it was far more expansive in scope—instead of sending individuals to just a few pain clinics in Georgia, Kennedy directed his new co-conspirators to clinics throughout Georgia and Florida, and then had them fill the prescriptions in pharmacies in a variety of different states (Kansas, Missouri, Oklahoma). In other words, the agreement between the defendant and his new co-conspirators starting in April 2013 amounted to a different drug operation than the smaller operation conducted by Kennedy, his son, and another from March 2011 to March 2013.

*Location*.  This last factor also weighs in the government's favor, for the second alleged conspiracy involved locations not pertinent to the first—as set forth, the second expanded from Georgia, to Florida, and then to several states in the heartland.

In sum, the *Sinito* factors militate against finding one overarching conspiracy and toward multiple conspiracies.  The only factor in Kennedy's favor is that the charged statutory offenses are the same.  But "in context with the other factors, this is a minor point, since one can certainly enter two conspiracies to commit the same type of crime." *Id.* at 456.  And the other factors show the second drug ring operated using different people, at a different time, in different places than the first drug ring did.  Given the totality of the circumstances, we agree with the district court that these were separate conspiracies.

B.

The second aspect of Kennedy's double jeopardy argument is one of multiplicity— "charging a single offense in more than one count in an indictment." *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008).  He claims his sex trafficking convictions were multiplicitous, and more specifically, that § 2241(c) is a lesser included-offense of § 2423(a) because, in his words, both have "a requirement that a defendant . . . do an act with the intent of engaging in illicit sexual activity with a minor."  Because Kennedy failed to raise such an argument in district court, we review for plain error.  *United States v. Yancy*, 725 F.3d 596, 600 (6th Cir. 2013).

A "court of appeals cannot correct an error . . . unless the error is clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993).  A lack of precedent "preclude[s a] finding of plain error." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015).  Here, there was (and still is) no binding authority holding § 2241(c) is a lesser included-offense of § 2423(a).  Indeed,

although we have not addressed the issue,[1] courts that have considered defendant's position have rejected it. *See, e.g.*, *Sealed Appellee v. Sealed Appellant*, 825 F.3d 247, 255–56 (5th Cir. 2016); *McKinney v. United States*, 2011 WL 2472569, at *7 (E.D. Mo. June 21, 2011). Given our plain-error lens, we therefore conclude defendant's multiplicity argument is without merit.

## II.

Kennedy's next challenge is to the district court's denial of his motion to sever his drug-conspiracy charge from his sex-crimes charges.

Federal Rule of Criminal Procedure 8 permits a single indictment to join multiple offenses "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 14 then permits a district court to "sever" properly joined offenses if it "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). "Prejudice" in this context means "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Such a risk notwithstanding, the Supreme Court has emphasized that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* at 539. To clear this high bar, therefore, a defendant must show "compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever," *United States v. Ross*, 703 F.3d 856, 885 (6th Cir. 2012) (citation and brackets omitted), and we apply the deferential abuse-of-discretion standard. *United States v. Cody*, 498 F.3d 582, 586 (6th Cir. 2007).[2]

---

[1]Contrary to defendant's assertion, *United States v. DeCarlo*, 434 F.3d 447, 454–57 (6th Cir. 2006) does not control here because that case considered a different portion of § 2423—subsection (b).

[2]As the government rightly notes, Kennedy's challenge appears to home in only on the district court's Rule 14 determination—focusing entirely on the evidence offered at trial (as

In concluding Kennedy failed to show the requisite prejudice, the district court noted the record testimony linking Kennedy's ability to "groom" his underage victims with their parents' participation—and for some, due to their own addiction to opioids—in his drug ring. Two of the minor victims told their parents about being abused, but their parents "didn't believe" them and continued to leave the children alone with Kennedy. The district court thus reasoned:

> I do think it's pretty clear, among other things, [one of the victims] said she told her mom. Her mom, as we know from this case, was a drug addict, was dependent on Mr. Kennedy. Her mom did nothing about this as a result.

> So I think all of that pertains to the drug conspiracy and the interplay as to how these individuals interacted with Mr. Kennedy, how Mr. Kennedy -- and why he was watching the kids when the parents were gone, which provided him opportunity. It allowed him to form the relationship. Then the relationship led to the taking them to the casino [where he abused them].

> At this point, it explains why the parents trusted the kids with Mr. Kennedy and how Mr. Kennedy had his opportunity to commit the alleged acts. So I do think it's an interwoven story. In fact, I think it's inextricably intertwined.

We agree. Contrary to Kennedy's assertion that "there was no evidence" that his perpetration of the sex crimes "were connected" to his drug conspiracy, the district court rightly found a sufficient relationship between the two. The district court, moreover, gave an appropriate limiting instruction, telling the jury that "[i]t is your duty to *separately* consider the evidence that relates to each charge, and to return a separate verdict for each one." (Emphasis added). Kennedy is required to "offer more than conclusory statements to show that the joinder prejudiced his defense." *United States v. Soto*, 794 F.3d 635, 657 (6th Cir. 2015). Given the significant overlap of facts associated with the separately charged crimes and the district court's limiting instruction,

---

required under Rule 14) instead of the language of the indictment (as required under Rule 8). *See generally United States v. Al-Din*, 631 F. App'x 313, 328 (6th Cir. 2015) (discussing the problem of defendants "blur[ring] the lines between Rules 8(a) and 14(a) on appeal"). And even if we were to construe defendant as preserving a Rule 8 issue, given the discussion in text, joinder was not prejudicial. *See United States v. Lane*, 474 U.S. 438, 449 (1986).

we give no credence to Kennedy's conclusory position that "the jury inferred bad character due to the nature of the joined charges."

Accordingly, the district court did not abuse its discretion in denying Kennedy's motion to sever.

III.

We turn next to Kennedy's claim the district court erred in denying his motion for judgment of acquittal on the grounds that the evidence presented was insufficient to sustain his drug and sex crimes convictions.

We review a district court's denial of a motion for judgment of acquittal de novo, assessing "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In so doing, we draw "all reasonable inferences in support of the jury's verdict and will reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (internal quotation marks omitted). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Taylor*, 800 F.3d 701, 711 (6th Cir. 2015) (citation omitted). "In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (citation omitted).

To sustain Kennedy's drug conspiracy conviction, "the government must have proved (1) an agreement to violate drug laws, in this case § 841(a)(1); (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Martinez*, 430 F.3d 317,

330 (6th Cir. 2005). It need not prove a formal agreement or offer direct evidence of a conspiracy; a jury may infer from circumstantial evidence a conspiracy's existence and an individual's knowledge of and participation therein. *Id.* Harking back to his double jeopardy position, Kennedy claims only an absence of proof that he "agreed to participate in a second conspiracy, different from the one he had already [pleaded] to." However, this claim butts headfirst into the evidence presented at trial. For example, the jury heard from Kennedy's numerous co-conspirators that he recruited them to engage in a scheme to obtain oxycodone through illicit means, which Kennedy would then distribute back to his co-conspiring addicts or to other purchasers. From this and other evidence, any rational juror could conclude Kennedy intended to join the conspiracy charged in the indictment.

Kennedy's challenge to his sex crimes convictions—that the government did not prove "intent to engage in sexual activity"—is equally as underwhelming. *See generally United States v. Chambers*, 441 F.3d 438, 450 (6th Cir. 2006). He attacks the credibility of the government's witnesses and notes one of the minor victims denied sexual abuse. Yet that is not enough to sustain his burden. The jury heard Kennedy "groomed" his victims by spending time with them and frequently purchasing gifts and giving cash, "gawk[ed]" at them, insisted on having the girls stay alone with him when they traveled, and threatened to kill them if they exposed his abuse. Most critically, two of the victims testified extensively about Kennedy's sexual abuse of themselves and others while traveling alone with him. Any rational juror could infer intent to engage in sexual activity from this (and other) evidence.

## IV.

Finally, Kennedy contends his sentence is substantively unreasonable because "a downward departure was appropriate" given his health issues and his familial caretaker

responsibilities.[3]   However, "[t]his court generally does not review a district court's decision not

to depart downward unless the record shows that the district court was unaware of, or did not

understand, its discretion to make such a departure." *United States v. Johnson*, 553 F.3d 990, 999

(6th Cir. 2009) (internal quotation marks and citation omitted).  "[W]e presume that the district

court understood its discretion, absent clear evidence to the contrary."   *United States v.*

*Santillana*, 540 F.3d 428, 431 (6th Cir. 2008).  Absent such clear evidence, we review the district

court's decision "only if (1) the sentence was imposed in violation of the law; (2) it was imposed

as a result of an incorrect application of the guidelines; (3) the sentence represented an upward

departure; or (4) the sentence was imposed for an offense for which there is no Sentencing

Guideline and is plainly unreasonable."  (citations and internal quotation marks omitted).  *Id.*  If

review is warranted, the plain error standard applies where the defendant failed to object to his

sentence before the district court.  *Id.*  Further, even if review is unwarranted, "we are still free to

review a defendant's claim that his sentence is excessive based on the district court's unreasonable

analysis of the section 3553(a) factors in their totality."  *Id.* (citation and internal quotation marks

omitted).

The district court's decision not to depart is unreviewable.  There is no clear evidence that

the district court did not understand its discretion to depart downward.  Kennedy has not otherwise

shown that the district court plainly erred in imposing the sentence of life imprisonment or that

this sentence was unreasonable.  *See generally United States v. Baker*, 559 F.3d 443, 448 (6th Cir.

2009); *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc).

---

[3]To the extent defendant raises a separate § 3553 challenge, we see no reason to find the
district court abused its discretion in sentencing defendant to life in prison.  *See generally United
States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014).

V.

For these reasons, we affirm the district court's judgment.