**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 12-4184
———

UNITED STATES OF AMERICA

v.

PERCY WILLIAM TRAVILLION
Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Crim. No. 2:04-cr-00144-007)
District Judge: Honorable Joy Flowers Conti

———

Argued: June 12, 2014

Before: FISHER, VAN ANTWERPEN, and TASHIMA[*],
*Circuit Judges*

(Filed: July 7, 2014)

———

[*] Hon. A. Wallace Tashima, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Richard Coughlin, Esq.
Federal Public Defender's Office, District of New Jersey
800-840 Cooper Street
Suite 350
Camden, NJ 08102

Louise Arkel, Esq. **[ARGUED]**
Federal Public Defender's Office, District of New Jersey
1002 Broad Street
Newark, NJ 07102
        *Attorneys for Appellant*

David J. Hickton, Esq.
Rebecca R. Haywood, Esq.
Jane M. Dattilo, Esq. **[ARGUED]**
United States Attorney's Office, Western District of
Pennsylvania
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
        *Attorneys for Appellee*

_____

OPINION OF THE COURT
_____

VAN ANTWERPEN, *Circuit Judge*.

Appellant Percy William Travillion ("Travillion"), is appealing a decision of the United States District Court for the Western District of Pennsylvania denying relief sought pursuant to 28 U.S.C. § 2255. We must address two issues

certified for appeal: whether trial counsel was ineffective for (1) failing properly to cross-examine a witness and (2) failing to file a pre-trial motion challenging whether the conspiracies charged in Counts Nine and Thirteen of the Indictment violated the Fifth Amendment's prohibition against double jeopardy. For the reasons that follow, we will affirm the decision of the District Court.

## I. Facts

Travillion was indicted by a grand jury in 2004 on three counts related to a large drug trade in the greater Pittsburgh area, in violation of 21 U.S.C. § 846 and § 841(a)(1), (b)(1)(A)(iii).[1] At trial, Travillion raised the

---

[1] In total the Indictment contained 19 counts. Travillion was indicted on Counts Nine, Ten, and Thirteen.

> Count Nine: From on or about November 20, 2002, and continuing thereafter to on or about February 8, 2003, in the Western District of Pennsylvania, the defendants . . . did knowingly, intentionally, and unlawfully conspire with one another and with persons both known and unknown . . . to distribute and possess with the intent to distribute fifty (50) grams or more of . . . cocaine base, in the form commonly known as crack.

> Count Ten: On or about December 16, 2002 . . . Percy William Travillion, did knowingly, intentionally, and unlawfully possess with the intent to distribute fifty (50) grams or more . . .

defenses that he was not a member of either conspiracy in Counts Nine and Thirteen, and also that the drug at issue in the Count Ten possession charge was heroin, not crack.[2] The United States called five witnesses, including Michael Good, the main supplier of drugs to Travillion.[3] Key to the presentation of evidence was a series of phone call wiretaps, including a call between Good and Travillion on December 16, 2002. Respecting this call, Good testified he was checking whether or not Travillion needed drugs before Good left town for a couple of days, and that what was being discussed was five ounces of crack, totaling $4,500.[4] Travillion's attorney

> of cocaine base, in the form commonly known as crack.
>
> Count Thirteen: From on or about November 20, 2002, and continuing thereafter to on or about February 8, 2003, in the Western District of Pennsylvania, the defendants . . . did knowingly, intentionally, and unlawfully conspire with one another and with persons unknown to the grand jury, to distribute and possess with the intent to distribute five hundred (500) grams or more of . . . cocaine.

(Appellee Br. at 20-21; *see also* App. vol. II at 68, 71-72.)

[2] We will refer to cocaine base in the form sold by Travillion as "crack" throughout the Opinion.

[3] Good testified the quantities of crack sold to Travillion increased during the period between 2002 and 2003, and eventually he began fronting the drugs to Travillion, in the expectation he would be paid after Travillion made sales.

[4] Good testified he sold crack to Travillion at $900 per ounce.

4

cross-examined Good on his and Travillion's addiction histories, the inability of Good to obtain crack around December 2002, Good's cooperation with the Government for a reduced sentence, and Travillion's role in the larger drug-dealing organization.

Travillion took the stand in his own defense, countering Good's testimony and claiming what was being discussed in the December 16 phone call was not crack but rather was nine bundles of heroin, with a value of only $450.[5]

---

[5] The relevant transcript portions of the December 16 phone call are reproduced below.

> [Good]: I was trying to get in touch with you to see if you're all right [sic] before I go out of town.
> [Travillion]: Was you cutting out today?
> . . . .
> [Travillion]: Cause I still had a couple of them things left.
> [Good]: I'm calling to make sure you're cool, because I'm not going to be back till Thursday.
> . . . .
> [Travillion]: That should hold me till then.
> [Good]: You'll be alright?
> [Travillion]: Yeah, yeah yep . . . . I'm going to try to grab one more then off you, can I do that? That way I'll have more then . . .
> [Good]: What are you turning in? Yeah, what you turning in?
> [Travillion]: Just grab one more . . . . I'm going to turn in probably like two.

On cross-examination, the Government challenged Travillion on the weight and type of drugs he testified to, because heroin was not what he typically sold nor was the amount the quantity of any drug he typically purchased. Travillion was convicted by a jury on all three counts, and sentenced to 188 months' imprisonment.[6] On appeal, this Circuit affirmed the decision of the District Court.[7] *See United States v. Travillion*, 321 F. App'x 156, 159 (3d Cir. 2009).

---

> [Good]: Cause you uh, we have forty-five cause you had five.
> [Travillion]: Right.
> . . . .
> [Good]: You turn in then, you gonna turn in two then make it back at five.
> [Travillion]: Right.

(App. vol. VI at 1104-05.)

[6] Travillion received concurrent sentences of 188 months' imprisonment and concurrent five-year terms of supervised release on Counts Nine, Ten, and Thirteen. This was at the bottom end of the United States Sentencing Guidelines range of 188 to 235 months, calculated from a total offense level of 34, including a two-level enhancement for obstructing justice under U.S.S.G. § 3C1.1, and a criminal history category of III. He also had to pay a $100 special assessment on each count.

[7] On direct appeal, Travillion alleged (1) the evidence was insufficient, (2) the jury instruction was improper, (3) there were procedural errors in enhancing his total offense level for obstruction of justice and for considering a state offense in the calculations, and (4) that Congress did not have the power

Travillion then filed a 28 U.S.C. § 2255 motion in the United States District Court for the Western District of Pennsylvania, seeking to vacate, set aside, or correct his sentence by adjusting the advisory Guidelines down two levels.[8] This motion alleged four reasons for collateral relief under an ineffective assistance of counsel claim:

> (1) Trial Counsel failed to effectively investigate and cross-examine Government witnesses, (2) Trial Counsel failed to effectively investigate facts made known to him by Petitioner constituting Petitioner's only realistic defense, (3) Trial Counsel failed to adequately advise Petitioner on the risk in his testifying on his own behalf, and (4) Trial Counsel failed to adequately object to Petitioner's conviction on two separate counts that comprised the same conspiracy, thus exposing Petitioner to double jeopardy.

*United States v. Travillion*, 2012 WL 5354530, at *2 (W.D. Pa. Oct. 29, 2012) (internal citation and quotation marks omitted). The District Court denied the motion, noting that while counsel's performance may have been deficient on certain issues, Travillion was not prejudiced, as the evidence presented against him was "overwhelming." *Id.* at *6. This appeal followed.

---

to enact the DNA Analysis Backlog Elimination Act under the Commerce Clause. *Travillion*, 321 F. App'x at 158-59.

[8] This claim also sought reduction of the obstruction of justice enhancement mentioned above. *See supra* note 6.

7

Travillion now argues counsel's performance was ineffective because he failed to impeach Good with his own prior testimony in a contemporaneous and factually similar case, titled by the parties as the "Ferguson Retrial."[9] *See United States v. Ferguson*, 394 F. App'x 873, 888 (3d Cir. 2010) (affirming retrial decision by the United States District Court for the Western District of Pennsylvania). Travillion also contends that counsel failed to object on double jeopardy grounds to the indictment charging two separate conspiracies in Counts Nine and Thirteen, which caused him to be twice punished with a $100 special assessment and an extra concurrent term of supervised release for a single conspiracy. Travillion now seeks an order vacating and remanding for a new trial, or in the alternative, remanding for an evidentiary hearing.

## II. Standard of Review[10]

*A. Section 2255 Motion*

As a collateral challenge, a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal of the sentence. *See, e.g.*, *United States v. Frady*, 456

---

[9] During the Ferguson Retrial, Good testified to his prior mental health issues and showed confusion when detailing which drugs he sold to which dealers. (Appellant Br. at 23 (citing App. vol. VII at 1569-72, 1665).)

[10] The District Court had jurisdiction over Travillion's claims pursuant to 18 U.S.C. § 3231 and 28 U.S.C. § 2255. We now have jurisdiction under 28 U.S.C. § 1291 and § 2253, as a final order by the District Court.

8

U.S. 152, 167-68 (1982). Indeed, relief under § 2255 is available only when "the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and . . . 'present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). While issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion,[11] *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993), they may, however, be used to support a claim for ineffectiveness. *See Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (noting claims of error under the Sentencing Guidelines are generally not cognizable on collateral review unless to support an ineffectiveness claim).

In a § 2255 review, we usually have the advantage of a § 2255 opinion from the District Judge who presided over the original trial. Accordingly, the District Judge is not limited to a cold written record, but is uniquely familiar with the overall circumstances of the original case. "[A] motion under 28 U.S.C. § 2255 is entered on the docket of the original criminal case and is typically referred to the judge who originally presided over the challenged proceedings . . . ." *Wall v. Kholi*, —U.S.—, 131 S. Ct. 1278, 1289 (2011). Although a § 2255 motion is sometimes loosely referred to as a habeas corpus motion, unlike a § 2254 habeas petition, which usually concerns cases that arose in state court, a § 2255 challenge is a post-trial motion to vacate, set aside or

---

[11] In addition, issues which should have been raised on direct appeal may not be raised with a § 2255 motion. *See DeRewal*, 10 F.3d at 105 n.4.

correct a sentence imposed in federal court. Section 2255 is a corrective action, *United States v. Hock*, 275 F.2d 726, 727 (3d Cir. 1960) (per curiam), and unlike "a § 2254 petition[, which] is a separate civil action, . . . a § 2255 motion is a further step in the criminal process," *United States v. Nahodil*, 36 F.3d 323, 328 (3d Cir. 1994); *see also United States v. Thomas*, 713 F.3d 165, 172 (3d Cir. 2013) (noting that Section 2255 "creates a statutory remedy consisting of a *motion* before the court where a movant was convicted" (internal citation and quotation marks omitted) (emphasis in original)).

## B. Reviewing Standard

"In a [§ 2255] proceeding, we exercise plenary review of the district court's legal conclusions and apply a clearly erroneous standard to the court's factual findings." *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997). The standard of review for a claim of ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prove ineffective assistance of counsel, the movant must show

> [first,] that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

10

466 U.S. at 687. Thus, to prove a valid claim, Travillion must show both deficiency and prejudice. *Id.*

As the Supreme Court has stated, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). On review, we "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 689). "In essence, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness' meaning 'reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). Regarding the interplay between *Strickland* and § 2255, if Travillion shows both elements of *Strickland*, he satisfies the requirements of § 2255. *See United States v. Rad-O-Lite of Phila., Inc.*, 612 F.2d 740, 744 (3d Cir. 1979) ("[P]ersons . . . can attack a conviction for fundamental defects, such as ineffective assistance of counsel.").

### III. Discussion

We now turn to the two certified ineffective assistance of counsel claims before us. First, Travillion claims that counsel was ineffective because he "failed to cross-examine . . . Michael Good, on matters that would have undermined Good's credibility and supported Travillion's defense, particularly on the crack possession charge, . . . [from] readily available transcripts of Good's testimony in [the Ferguson Retrial]." (Appellant Br. at 19.) Second, Travillion avers that

11

"counsel's failure to challenge the [conspiracy] indictment[s] on double jeopardy grounds also constituted deficient performance . . . [where] [t]he circumstances of the case amply satisfied the nominal burden required to . . . challenge at the pretrial stage." (*Id.*) Travillion contends both failures of counsel prejudiced the outcome of his trial because they resulted in multiple convictions and increased sentences.

We begin, as above, with the steps outlined in *Strickland*. 466 U.S. at 687. We may address the prejudice prong first "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Id.* at 697. We will address both claims in turn, undertaking plenary review, and reminding ourselves that both deficiency and prejudice must be proven to have a valid claim for relief. *Id.* at 687.

### A. Failure to Adequately Cross-Examine

Travillion avers that trial counsel's performance was deficient for failing to obtain the prior testimony and cross-examine Michael Good with contradictory and impeachment evidence from the Ferguson Retrial, and these errors significantly prejudiced the outcome of the trial.

### 1. Prejudice

In determining prejudice, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Travillion claims counsel prejudiced his defense, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id.* at 694. This alleged prejudice concerns the failure of trial counsel to utilize statements made by Good at the Ferguson Retrial to impeach his statement that he sold Travillion crack and failing to bring up Good's prior testimony on his mental health issues.[12] For example, during the Ferguson Retrial, Good testified he could not remember the terminology he used for drugs with buyers and which drug he sold to another dealer in a prior deal. (*See* Appellant Br. at 29 (citing App. vol. VII at 1752).)

> [Good:] I served them their drugs that day, I know that. I remember that.

---

[12] These issues included schizophrenia, for which Good collected Social Security disability benefits. Good testified at the Ferguson Retrial, stating:

> [Attorney:] During the interview, did the probation officer ask you questions about mental health problems that you've had?
> [Good:] Yes.
> [Attorney:] Did you tell the probation officer you had had mental health problems?
> [Good:] Yes . . . .
> [Attorney:] Mr. Dietz showed you your presentence report and questions were asked about . . . what you were diagnosed with, and at one point you were asked whether you were a life-long schizophrenic, and that was corrected to paranoid schizophrenic related to drug use.

(App. vol. VII at 1860-61.)

13

[Attorney:] When you say you served them their drugs, what are you referring to?
[Good:] Heroin, cocaine.
[Attorney:] Do you recall which one as you sit there?
[Good:] No. I don't recall which that he got that day.

(App. vol. VII at 1572.) Travillion argues Good's inability to remember the type of drug sold undermines his testimony that Travillion purchased crack on December 16, rather than heroin, as Travillion alleges. This forms the basis of Travillion's assertion that Good's confusion, along with his testimony in the Ferguson Retrial to occasionally selling small quantities (or "bundles") of heroin,[13] would have created reasonable doubt that the December 16 phone conversation referenced crack. Travillion argues that there is a reasonable probability that, had counsel more aggressively

---

[13] A "bundle" is "ten stamped bags wrapped together" and five bundles is the equivalent of one brick. (App. vol. III at 315-16.) Good typically sold bricks, but testified to selling these small quantities on occasion. Travillion's argument was that at times Good sold small quantities and that he did so on this occasion.

[Attorney:] Would you sell [heroin] in less than [brick size]? Would you ever sell bundles to anybody you know?
[Good:] Yeah. I didn't like that neither, but I did it sometimes.

(App. vol. VII at 1813.)

14

cross-examined Good, the jury would have acquitted or deadlocked on the crack possession charge. This, in turn, would have altered Travillion's sentence in two ways: first, by exposing him to one less concurrent term of supervised release and one less $100 special assessment; and second, by precluding the District Court's assessment of a two-level upward adjustment for obstruction of justice, based on its conclusion that Travillion perjured himself when he testified that the drug at issue was heroin, not crack.[14] (*See* Appellant Br. at 36-37.)

---

[14] At trial, Travillion offered as a defense, elicited through his own testimony, that the December 16 phone call was referring to heroin.

> [Attorney:] Mr. Travillion, . . . you say, cause I still had a couple of things left.
> . . . .
> What are you referring to?
> [Travillion:]  I am referring to bundles of heroin.
> . . . .
> [Attorney:] Is it fair to say that at some point prior to December 16, 2002, you and Michael Good hooked up and did a heroin transaction?
> [Travillion:] Yes.
> . . . .
> [Attorney:] The price was $90.00 a bundle?
> [Travillion:] Right.
> . . . .
> [Attorney:] And you had five bundles?
> [Travillion:] Yes.

The District Court, in denying relief, held the "Petitioner's narrow focus on the minutiae of counsel's cross-examination is misguided." [15] *Travillion*, 2012 WL 5354530, at *7. As the District Court determined, "[e]ven if counsel's actions were deficient, there can be no prejudice because the evidence was otherwise overwhelming."[16] *Id.* at *6. This conclusion was based on "the totality of the circumstances" of trial evidence. The District Court cited "Good['s] open[] admi[ssion] that he was serving a fifteen-year sentence for drug trafficking crimes" as well as "incriminating wiretap evidence and [the] testimony of other witnesses against the

---

> [Attorney:] So, and how much did Michael Good charge you for those five bundles?
> [Travillion:] He charged me $450.00 . . . .

(App. vol. V at 813-17.)

[15] As noted, the same District Judge presided over the Ferguson Retrial as well, and heard the testimony now raised by Travillion as necessary for impeachment. While not dispositive, this same District Judge, after observing the conduct of trial counsel and the evidence presented, found no evidence of deficiency.

[16] The District Court disposed of this claim under the prejudice prong, but also found no merit to the claim counsel was deficient. *Id.* ("Even if the court were to conclude that petitioner was prejudiced by his counsel's actions, there is nothing in the record to indicate that his counsel's actions were professionally deficient in the way the petitioner alleges.").

16

petitioner, including Sherri Hunter, Keeley Sowell, and Special Agent Jimenez."[17] *Id.* at *7.

Like the District Court, we also do not find trial counsel's actions to have prejudiced Travillion. The right to a fair trial does not translate into the right to a perfect trial. *See Gov't of the V.I. v. Bradshaw*, 726 F.2d 115, 119 (3d Cir. 1984); *see also United States v. Wilensky*, 757 F.2d 594, 599 (3d Cir. 1985). The Supreme Court has stated "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

It is true that Circuit courts, including ours, have found counsel deficient for failing to cross-examine a witness with prior inconsistent statements, *see, e.g.*, *Berryman v. Morton*, 100 F.3d 1089, 1098 (3d Cir. 1996) (noting the failure to cross-examine using inconsistent statements from a prior trial to be deficient); *Nixon v. Newsome*, 888 F.2d 112, 115 (11th

---

[17] At trial, Special Agent Jimenez of the Drug Enforcement Agency testified his understanding of the December 16 phone call to be "Good . . . was telling Mr. Travillion that he owed him $4,500.00 because he had given him five ounces of *crack*." (App. vol. III at 373 (emphasis added).) Keeley Sowell, a user and dealer with Good, also testified she saw Good sell crack to Travillion. Finally, another dealer in Good's network, Sherri Hunter, testified that in a call on the same day, she and Good discussed whether or not she had enough crack before he went away, similar to Good and Travillion's conversation.

17

Cir. 1989) (determining deficiency by trial counsel for failing to confront the witness with evidence available in the transcript), however, this is not ultimately decisive under the prejudice prong.

Nevertheless, the collective evidence presented by the Government and the evidence elicited by trial counsel in his cross-examination of Good shows Travillion was not prejudiced, as the outcome of the trial would not have been different. Counsel's strategies, as expressed in his closing argument, were to attack the credibility of Good as a witness, call into question his recollection of what drug he sold to Travillion, and establish a two-fold defense that: (1) Travillion was not a co-conspirator with Good, and (2) Travillion possessed heroin, not crack. Counsel stated:

> [I]f you listen to the conversations, the words, there is no question that Mr. Travillion possessed heroin on that day with the intent to distribute it to someone else . . . . What we are arguing is the drug.
> . . . .
> Police say anything about the 12-16-02 of substance? No . . . . Keeley say anything about that? No. Sherri Hunter? No. Lamont Washington? No. No physical evidence. Wasn't arrested with any stuff. No drugs seized. No drugs found. No statement. No surveillance, whether it just be eyeball from police officers or videotape. Nothing.
> It boils down to, folks, to Michael Good.
> . . . .

I am going to argue to you that the facts and circumstances are going to demonstrate to you that it was heroin, not coke.

. . . .

Before we get to that, central to our theme, the government's theme to get a conviction on that, you guys need to believe Michael Good . . . . No doubt about it, did Michael Good present himself to you as someone who has a firm grasp of the facts[?] Long drug history.

And then we are being asked questions about an event four years ago. Imagine yourself without drug history, and fried brain cells, being asked what happened four years ago. It would be very, very difficult.

(App. vol. V at 1034-35.) Counsel was able to employ this strategy effectively through his cross-examination of Good, during which he elicited testimony of Good's addictions,[18] his

---

[18]

[Attorney:] Sir, you told this jury about your addiction history. One addiction was to heroin, right?
[Good:] Yes.
[Attorney:] Another addition was to cocaine?
[Good:] Yes.
. . . .
[Attorney:] And you were addicted to crack cocaine?
[Good:] Yes.

(App. vol. IV at 585.)

lack of memory of specific events,[19] and his exchange of testimony for a reduced sentence.[20]

Travillion testified and claimed instead the drug discussed on December 16th was heroin. On cross, however, Travillion undermined his own testimony by admitting the conversation was the first ever dealing of heroin between the two.[21] Further, Travillion also admitted that Good typically

---

[19] Counsel also addressed Good's inability to recall his dealings without the aid of telephone calls as evidence.

> [Attorney:] Not referencing the tape-recordings[,] [a]s you sit here today, are you able to give us specific date[s], specific amounts of drug deals that you had with Percy Travillion?
> [Good:] No.

(*Id.* at 637.)

[20] An example of this line of questioning is as follows:

> [Attorney:] Sir, your sentence was fifteen years, ten months, do I have that right?
> [Good:] Yes.
> [Attorney:] And your testimony here is designed so you may very well get a reduction in that sentence?
> [Good:] Yes.

(*Id.* at 638.)

[21] This evidence is relevant to the outcome of the trial because it helps determine that it would be unlikely the coded language and quoted prices during the December 16 call

sold in large quantities, much larger than what Travillion claims was being discussed in the call.

Finally, it must further be noted that the District Court's jury charge informed the jury regarding Good that

> [t]he testimony of an alleged accomplice, someone who said he or she participated in the commission of a crime, must be examined and weighed by the jury with greater care . . . .
>
> Michael Good . . . may be considered to be [an] alleged accomplice[] in this case or related cases.
>
> . . . .
>
> The jury must determine whether the testimony of the accomplices has been affected by their self-interest or by their own agreements with the government . . . . *You should never convict a defendant solely upon the unsupported testimony of an accomplice unless you believe the testimony beyond a reasonable doubt.*

(App. vol. V at 975-75 (emphasis added).) This charge further protected Travillion by instructing the jury to heavily scrutinize Good's testimony as a key witness for the Government.[22]

---

would have occurred for heroin, if the two never dealt it in the past.

[22] Trial Counsel did not object to this charge in the pretrial proceedings.

Nothing in the evidence presented shows that counsel's errors in his cross-examination of Good were so serious, in light of all the evidence and jury instruction, to deprive the defendant of a trial whose result is reliable. *See Strickland*, 466 U.S. at 687. The totality of the evidence presented, and jury instruction concerning the reliability of Good's testimony, created a fair trial in which Travillion was found guilty. Thus, we believe trial counsel was not ineffective for failing to cross-examine Good with evidence available from the Ferguson Retrial because the outcome of the trial was not prejudiced by counsel's actions.

### 2. Deficiency of Counsel's Performance[23]

---

[23] We note that we must assume from Travillion's pro se assertion made in his § 2255 motion and the collective record that counsel failed to obtain and investigate the transcripts from the Ferguson Retrial. (Appellant Br. at 22 ("Travillion asserted in his § 2255 motion that his trial counsel failed even to obtain the transcripts and other relevant records from the prior trial.").) In a pro se § 2255 petition, as here, we must accept "as true the allegations of the petitioner, unless they are clearly frivolous." *Moore v. United States*, 571 F.2d 179, 184 (3d Cir. 1978). More importantly, the "failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation." *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

Assuming Travillion's allegation to be true, the "failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States*

22

Having found trial counsel's representation not to be prejudicial to Travillion, we need not address the deficiency prong, as both deficiency and prejudice must be proven to support a valid claim for relief for ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687. "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Marshall v. Hendricks*, 307 F.3d 36, 86-87 (3d Cir. 2002) (internal citation and quotation marks omitted).

B. *Double Jeopardy*[24]

---

*v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989). "While counsel is entitled to substantial deference with respect to strategic judgment, an attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997). This *per se* deficiency, however, is not dispositive, as we have found Travillion was not prejudiced by the actions of trial counsel.

[24] A double jeopardy claim was never raised by Travillion during the course of his trial or original appeal, and thus would be waived. However, now the claim that is being put forth by Travillion is "not . . . an actual double jeopardy claim . . . but rather . . . to vacate or correct his sentence because of ineffective assistance of counsel in failing to *raise* a double jeopardy claim." *Travillion*, 2012 WL 5354530, at *13 n.15 (emphasis in original). The District Court describes correctly why this claim has not been waived for failing to raise the issue of double jeopardy during the original trial: "[i]t is manifest that a claim of double jeopardy is an affirmative

23

Travillion alternatively argues that trial counsel was ineffective for failing to file a pre-trial motion challenging the indictments charging Travillion with two conspiracies as violative of double jeopardy.[25] Even though he received concurrent jail sentences on each count, Travillion maintains he had to face an additional concurrent term of supervised release and pay an extra $100 special assessment on the second conspiracy conviction.[26] Again, we undertake plenary review under the two-prong *Strickland* test for deficiency and

---

defense which must be raised properly [i.e., before trial] or may be deemed waived." *Id.* (quoting *United States v. Young¸* 503 F.2d 1072, 1074 (3d Cir. 1974) (alteration in original)). The District Court further states, "[we] need [not] reach an ultimate conclusion about whether a claim of double jeopardy would have been sustained. The court must follow the *Strickland* analysis in determining whether counsel's assistance was deficient and whether petitioner was prejudiced by this deficiency." *Id.*

[25] Count Nine charged Travillion with conspiracy to distribute crack cocaine, and Count Thirteen with conspiracy to distribute powder cocaine.

[26] We have determined that Travillion was not prejudiced with regard to his claim of inadequate cross-examination and this ends his contention that he improperly received a sentencing adjustment for obstructing justice. With regard to the double jeopardy claim, there remains an issue as to whether or not a $100 special assessment and additional concurrent term of supervised release, standing alone, are sufficiently prejudicial to support a motion under 28 U.S.C. § 2255. Since we resolve the double jeopardy claim on the merits, we need not reach this issue. *See Fields v. United States*, 201 F.3d 1025, 1029 (8th Cir. 2000).

prejudice. For this analysis we will begin by determining whether Travillion was prejudiced by trial counsel's failure to challenge the indictment prior to trial.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause "prohibits [the government] from splitting one conspiracy into several prosecutions." *United States v. Becker*, 892 F.2d 265, 268 (3d Cir. 1989). The key is whether the multiple crimes charged were the same "in law and in fact." *United States v. Garcia*, 919 F.2d 881, 887 (3d Cir. 1990) (internal citation and quotation marks omitted). This Circuit employs a "totality of the circumstances" test when determining whether a pretrial evidentiary hearing is necessary to determine if an indictment is invalid under the Double Jeopardy Clause. *See United States v. Liotard*, 817 F.2d 1074, 1078 (3d Cir. 1987).

"If the defendant makes the requisite showing, he is entitled to a pretrial evidentiary hearing to adjudicate his double jeopardy claim." *United States v. Smith*, 82 F.3d 1261, 1267, 1273 (3d Cir. 1996) ("The defendant need only be able to identify alleged facts and other evidence which, if credited, gives reason to believe that any alleged conspiratorial activity was in furtherance of a single conspiracy."). "The ultimate purpose of the totality of the circumstances inquiry is to determine whether two groups of conspirators alleged by the government to have entered separate agreements are actually all committed to the same set of *objectives* in a single conspiracy." *Id.* at 1271 (emphasis added). Moreover, "[a] non-frivolous showing of a single conspiracy will be made

25

when the record reveals a degree of participant overlap, which together with other factors, permits an inference that members of each alleged conspiracy were aware of the activities and objectives of the other conspiracy and had some interest in the accomplishment of those objectives." *Id.*

Under *Liotard*'s "totality of the circumstances" test, the threshold is not high, and requires four factors to be considered.

> [A] conspiracy defendant will make out a non-frivolous showing of double jeopardy if he can show that (a) the "locus criminis" of the two alleged conspiracies is the same, (b) there is a significant degree of temporal overlap between the two conspiracies charged, (c) there is an overlap of personnel between the two conspiracies (including unindicted as well as indicted coconspirators), and (d) the overt acts charged and the role played by the defendant according to the two indictments are similar.

817 F.2d at 1078 (citations omitted) (citing *United States v. Felton*, 753 F.2d 276, 279-81 (3d Cir. 1985); *United States v. Inmon*, 568 F.2d 326, 328 (3d Cir. 1977)). These factors need not be applied in a rigid manner, as "different conspiracies may warrant emphasizing different factors." *Smith*, 82 F.3d at 1267.

### 1. Prejudice

The District Court denied Travillion's claim, finding Travillion was not prejudiced by counsel failing to move to quash the multi-conspiracy indictment. The District Court

reasoned instead, "[t]he ultimate question is whether there are multiple *agreements* or only one." *Travillion*, 2012 WL 5354530, at \*13 (citing *Smith*, 82 F.3d at 1267). The District Court found without merit Travillion's argument that the conspiracy charges were duplicative and unnecessary because both the crack and cocaine conspiracies were charged under the same conspiracy statute, 21 U.S.C. § 846, which does not include type of drug as an element of the offense. *Id.* at \*14.

We will now undertake the totality of the circumstances test to determine if a nonfrivolous showing was made which would have supported a pretrial evidentiary hearing. If a showing was made, counsel's performance may be determined to have prejudiced Travillion.

### a. "Locus Criminis"

"'Locus criminis' is defined very simply as the 'locality of a crime; the place where a crime was committed.'" *Smith*, 82 F.3d at 1268 (quoting Black's Law Dictionary 941 (6th ed. 1990)). The Government conceded, and we agree, that the locus criminis of the Western District of Pennsylvania or the greater Pittsburgh area was the same for both Counts Nine and Thirteen. (Appellee Br. at 52.)

### b. Temporal Overlap

It is clear there was a "significant degree of temporal overlap" between the two conspiracies because Counts Nine and Thirteen both state the same timeframe of the conspiracies as "[f]rom on or about November 20, 2002, and continuing thereafter to on or about February 8, 2003." (App. vol. II at 68, 72.)

27

*c. Overlap of Personnel*

We have outlined the importance of reviewing the personnel involved in the two conspiracies in determining whether a double jeopardy claim exists:

> An overlap in membership is useful to a double jeopardy analysis to the extent that it helps determine whether the alleged conspirators in both indictments were committed to the same objectives and consequently were members of a single conspiracy. . . . [I]n evaluating the degree of overlap-in-participants factor in a particular case, one must look to the circumstances of both the common participants and the participants apparently connected with only one of the alleged conspiracies.

*Smith*, 82 F.3d at 1269. Determination of an overlap of personnel can help decide the relevant objectives of each conspiracy. *Id.* at 1270; *see also Becker*, 892 F.2d at 268 (noting a conspiracy to grow and distribute marijuana and one to smuggle and distribute foreign-grown marijuana with overlaps in personnel had "two different objectives" and "hence [were] two conspiracies").

Travillion avers that while only he and Keeley Sowell were named in both Counts, the language in the Indictment referring to "persons unknown" encompasses other participants, most notably Michael Good. He correctly set forth the standard to support a pretrial evidentiary hearing as merely a "nonfrivolous" showing of commonality, and argues

28

that enough evidence was available for trial counsel to seek a hearing to challenge the indictments. On the commonality of participants alone, the District Court agreed with Travillion, finding that, although on the face of the Counts evidence of the same parties is limited, it was "at least nonfrivolous to claim commonality of participants." 2012 WL 5354530, at *15.

While we agree with the District Court that some participants overlapped, we disagree that their knowledge of, and objectives for, the selling of crack and cocaine were common enough to create a single conspiracy. *See Becker*, 892 F.2d at 269. The overlap of participants in the two conspiracies, at least as far as Travillion and Seeley, together with evidence from witness testimony centering the sale of both powdered and crack cocaine around Michael Good, is not enough to "permit[] an inference that members of each alleged conspiracy were aware of the activities and objectives of the other conspiracy and had some interest in the accomplishment of those objectives." *Smith*, 82 F.3d at 1271.

To decide whether multiple conspiracies existed, and thus if Travillion was prejudiced, we must ask not only whether the conspirators involved in Counts Nine and Thirteen were the same, but more broadly, under *Becker*, whether they had the same objectives. In *Becker*, this Circuit, under the "totality of the circumstances" test of *Liotard*, determined that a "party can be involved in more than one conspiracy at one time." 892 F.2d at 268. Further, we must look at whether "the two conspiracies did not depend on each other for success and [if] they had different ultimate objectives." *Id.* at 269 (citing *United States v. West*, 670 F.2d 675, 681 (7th Cir. 1982)). Finally, "[w]hen the evidence

29

indicates that the activities of the alleged conspiracies are not interdependent or mutually supportive and that there are major participants in each conspiracy who lack knowledge of, or any interest in, the activities of the other, this factor weighs heavily in favor of the conclusion that two conspiracies exist." *Smith*, 82 F.3d at 1269.

Travillion failed to show many of the overlapping participants had knowledge of other dealers involved, or sold both drugs alleged here as part of two conspiracies. Had a pretrial evidentiary hearing been undertaken upon trial counsel's petition, evidence would have been brought forth concerning a stipulation between the parties that some participants were solely dealers of cocaine, and others only dealt crack, and thus had different objectives.[27] (*See*

---

[27] The stipulation states:

> The United States and defendant Percy William Travillion stipulate that Isaiah Sherrell . . . would testify that . . . he was involved in Michael Good's crack cocaine distribution conspiracy, . . . that Jerome Thompson . . . would testify that . . . he was involved in Michael Good's powder cocaine distribution conspiracy, . . . that Mark Craighead . . . would testify that . . . he was involved in Michael Good's powder cocaine distribution conspiracy, . . . that Sam Frazier . . . would testify that . . . he was involved in Michael Good's powder cocaine distribution conspiracy, . . . [and] that Coty Youngblood . . . would testify that . . . he

30

*Stipulation*, App. vol. V at 801-02.) The relevant part states other dealers, such as Isaiah Sherrell, "had no dealings or personal interaction in drug trafficking with defendant Percy Travillion." (*Id.* at 801.) As in *Smith*, "[e]xcept for [Good], the common figure, no conspirator was interested in whether any [deal] except his own went through. . . . The conspiracies therefore were distinct and disconnected, not part of a larger scheme . . . . There was no drawing of all together in a single, overall, comprehensive plan." 82 F.3d at 1270 (quoting *Blumenthal v. United States*, 332 U.S. 539, 558 (1947)).

### d. Similar Overt Acts

The District Court described this prong of the totality of the circumstances test as "problematic," because 21 U.S.C. § 846 does not require overt acts. Since there is no requirement of an overt act, we hold that this strict approach to this prong is too narrow and rigid under the modern "totality of the circumstances" test. *Smith*, 82 F.3d at 1268 ("Undue emphasis on the alleged overt acts is precisely the problem we sought to avoid when we adopted the totality of the circumstances approach. That approach requires us to look into the full scope of activities described and implied in the indictments."). Thus, we now broaden our analysis and decide whether to infer only one conspiracy from the relevant activities of those involved. *See Felton*, 753 F.2d at 280.

---

was involved in Michael Good's powder cocaine distribution conspiracy . . . .

(App. vol. V at 801-02.)

31

Applying this broad standard, Travillion argues we can infer a single conspiracy to distribute cocaine-based drugs in the Pittsburgh area. Other Circuits have found that multiple transactions can constitute a single conspiracy. "The unity essential to a conspiracy is derived from the assent of its members to contribute to a common enterprise. Seemingly independent transactions may be revealed as parts of a single conspiracy by their place in a pattern of regularized activity involving a significant continuity of membership." *United States v. Kelley*, 849 F.2d 999, 1003 (6th Cir. 1988) (quoting *United States v. Grassi*, 616 F.2d 1295, 1303 (5th Cir. 1980)). Conversely, the Eighth Circuit held, even if "the statutory offenses charged are the same, . . . in context with the other factors, this is a minor point, since one can certainly enter two conspiracies to commit the same type of crime." *United States v. Ledon*, 49 F.3d 457, 460 (8th Cir. 1995) (referring to 21 U.S.C. §§ 841 and 846); *see also United States v. Kienzle*, 896 F.2d 326, 329 (8th Cir. 1990) (stating "[w]hile both indictments charge[d] . . . a drug conspiracy violative of the same statute, 21 U.S.C. § 846, entirely different controlled substances are named"). Further, the Sixth Circuit has found two conspiracies existed when charged under the same statute as those in question here. *See United States v. Wheeler*, 535 F.3d 446, 457 (6th Cir. 2008) (noting an indictment charging conspiracy to distribute cocaine and methamphetamine and a second charging a conspiracy to distribute the same and additional drugs were, when considering all the factors, different enough to constitute two separate conspiracies).

Importantly, the Supreme Court has held that "a defendant may be subject to multiple prosecutions of the same conduct if Congress intended to impose multiple punishments for that conduct." *United States v. Rigas*, 605

32

F.3d 194, 204 (3d Cir. 2010) (citing *Albernaz v. United States*, 450 U.S. 333, 344 (1981)). While Travillion was charged in each under the same conspiracy statute, 21 U.S.C. § 846, the underlying offenses for each count are two separate statutory provisions. Crack is punished under § 841(b)(1)(A)(iii), while powder cocaine falls under § 841(b)(1)(B)(ii). Congress intentionally created separate statutory provisions and, more importantly, separate punishments. *See, e.g., United States v. Gunter*, 462 F.3d 237, 242 (3d Cir. 2006) (noting the weight ratio differences for punishment purposes for crack and cocaine). "It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." *Albernaz*, 450 U.S. at 344, n.3 (citing *Harris v. United States*, 359 U.S. 19 (1959)). Most importantly, "[t]his is true even though the 'single transaction' is an agreement or conspiracy." *Id.* (citing *American Tobacco Co. v. United States*, 328 U.S. 781 (1946)). The potential punishments for crack and powder cocaine differ and it is important to know whether the jury convicted the defendant of conspiracy to distribute crack or conspiracy to distribute cocaine, or both. The use of separate conspiracies provides a convenient way of determining this.

In sum, judging the "totality of the circumstances" by the standards set forth in *Liotard*, Travillion would not have met the "nonfrivolous" threshold necessary to support an evidentiary hearing on his double jeopardy claim, and thus he was not prejudiced by counsel's failure to challenge the indictment. While a number of the *Liotard* factors are met, nothing in the evidence presented overcomes the discontinuity between the cocaine and crack conspiracies. The parties involved, other than Michael Good, did not have a

singular agreement or objective, nor did they overlap in all respects. Simply put, Travillion "has failed to provide a basis for inferring that all conspirators were tied together into one conspiracy." *Smith*, 82 F.3d at 1268.

In light of our determination Travillion was not prejudiced, we need not address the deficiency prong. *See Strickland*, 466 U.S. at 697. In addition, we need not reach the issue of whether or not a concurrent additional term of supervised release and an extra $100 special assessment were sufficiently prejudicial to support a motion under 28 U.S.C. § 2255.

### IV. Conclusion

For the foregoing reasons, because Travillion failed to prove he was prejudiced on either ground due to counsel's alleged ineffectiveness, he has not met his burden. No "fundamental defect which inherently results in a complete miscarriage of justice" has been shown to exist and the result of the trial is reliable. Accordingly, we will affirm the decision of the District Court denying Travillion's § 2255 motion.