NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1595
_____

UNITED STATES OF AMERICA

v.

JAMES EDWARD CLARK,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-08-cr-00508-001)
District Judge: Honorable Robert F. Kelly
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 4, 2016

Before: McKEE, *Chief Judge*, SMITH, and HARDIMAN, *Circuit Judges*.

(Filed: June 15, 2016)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

James Edward Clark appeals the District Court's order denying his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Because we agree with the District Court that Clark's defense counsel was not ineffective, we will affirm.

## I

Clark was indicted by a federal grand jury on one count of attempting to manufacture methamphetamine under 18 U.S.C. § 846 and one count of possessing red phosphorous under 18 U.S.C. § 841(c)(1). After a three-day jury trial, he was convicted on both counts and the District Court sentenced him to 360 months' imprisonment. We upheld Clark's convictions and sentence on direct appeal. *See United States v. Clark*, 419 F. App'x 248, 251 (3d Cir. 2011).

The Government's case at trial relied principally on testimony from a confidential informant who had agreed to cook methamphetamine for Clark. Clark in turn supplied the informant with precursor materials and equipment, including laboratory-grade glassware, red phosphorous, and ephedrine. The ephedrine that Clark provided, however, was actually a mixture of niacinamide, dimethyl sulfone, and nicotinic acid. None of these compounds are chemical precursors to methamphetamine or implicated in its synthesis, facts that the Government conceded in its opening and closing arguments and that Clark's defense counsel repeatedly emphasized. Clark's defense revolved around a theory that he

had intentionally supplied fake ephedrine in the hopes of either defrauding the informant or taking revenge on the informant for past debts.

Following his unsuccessful direct appeal, Clark filed a pro se motion under 28 U.S.C. § 2255 in the District Court asserting several collateral attacks on his criminal sentence. The District Court appointed new counsel for Clark and conducted two evidentiary hearings, at one of which Clark presented expert testimony from a forensic chemist. Clark's trial counsel also testified. Clark then filed a counseled motion asserting that his trial counsel was constitutionally deficient for: (1) not retaining a forensic chemist to rebut the Government's expert; (2) advising Clark not to testify in his own defense; and (3) failing to investigate and present several witnesses to testify on Clark's behalf. The District Court considered each of Clark's arguments, but denied his motion. Clark appealed.[1]

## II

Whether counsel's performance is deficient under the Sixth Amendment requires a showing that: (1) discrete acts or omissions by counsel "were outside the wide range of professionally competent assistance" and not the "result of reasonable professional judgment"; and (2) as a consequence, "there is a reasonable probability that, but for

---

[1] The District Court had jurisdiction over Clark's habeas petition under 28 U.S.C. § 2255 and issued a certificate of appealability on March 20, 2015. We have appellate jurisdiction under 28 U.S.C. § 2253. We review the District Court's factual findings for clear error and its legal conclusions de novo. *United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014).

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *i.e.*, that "the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

## A

Clark first claims that his counsel was ineffective because he failed to retain a forensic chemist to rebut the Government's expert witness. He suggests that a defense expert could have undermined the Government's claim that he intended to manufacture methamphetamine by testifying that the materials Clark provided could not have been turned into methamphetamine. He further argues that the expert could have testified about Clark's sophistication in providing the informant with laboratory-grade glassware—implying that Clark would have known the ephedrine was fake—and that Clark did not provide the informant with *all* necessary materials (such as iodine) for a successful synthesis.

The District Court considered each of these contentions and found them unpersuasive. As the Court observed: (1) the Government readily conceded that it would have been impossible for the informant to synthesize methamphetamine from Clark's supplies; (2) Clark's counsel repeatedly challenged the Government's witnesses—including the informant and the Government's forensic chemist—on this point; and (3)

4

the jury was made aware of the fact that Clark had supplied a laboratory-grade flask and other necessary reagents, both indicative of his knowledge and sophistication.

We agree with the District Court. At best, the expert testimony Clark sought would have been duplicative of evidence and arguments introduced by counsel through other means. At worst, the expert's testimony could have cut against Clark, for example by showing that he intended to rely on the informant's assistance or that he was sophisticated in the business of making and selling methamphetamine. Accordingly, Clark's claim fails to overcome the presumption that his counsel's decision not to employ an expert was strategic.[2]

## B

Next, Clark contends his counsel was ineffective because he advised Clark not to testify. According to Clark, his testimony would have been the only direct evidence of his intent, the need for which was particularly acute because the District Court had already ruled that his involvement in a 2007 methamphetamine cook was admissible. As the District Court observed, however, counsel had "a number of sound tactical reasons" for giving this advice. App. 16. Clark's testimony would have opened him to cross-examination on statements made shortly after his arrest. In those statements, Clark agreed

---

[2] Clark also complains that the Government notified him of its intention to introduce expert testimony just three days before trial—in violation of Federal Rule of Criminal Procedure 16(a)(1)(G)—and that his counsel failed to object or ask for a continuance despite this obvious error. In fact, the record shows that the Government gave Clark notice of its expert on November 10, 2008, three months before trial.

to turn over nineteen additional pounds of ephedrine, which subsequent testing revealed to be niacinamide, the same substance he had supplied to the informant. Such testimony would have seriously undermined the defense, which turned entirely on Clark knowing the ephedrine was fake. And Clark would have had to explain away a number of practically "unexplainable" statements recorded by the informant, as well as account for exactly why he was in possession of paraphernalia associated with "clandestine methamphetamine laboratories." App. 279, 499. For these reasons, we agree with the District Court that advising Clark not to testify was an exercise of "reasonable professional judgment," well within the "wide range" of reasonable conduct permitted under *Strickland*. 466 U.S. at 690–91.

## C

Finally, Clark asserts that counsel failed to investigate and present several potential defense witnesses: Ron Lavan, Sherry Baker, and Mary Lynn Hallas, and Eric Rolfing.[3] We have recognized that, in certain circumstances, "a complete failure to investigate potentially corroborating witnesses" can constitute ineffective assistance. *See, e.g.*, *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (quoting *United States v. Debango*, 780 F.2d 81, 85 (D.C. Cir. 1986)).

As part of Clark's habeas case, Lavan, Baker, and Hallas submitted affidavits setting forth the general content of what their testimony would have been at trial, and

---

[3] The parties do not agree on the spelling of Rolfing's name, so we have adopted the District Court's version.

6

stating that they would have been willing to testify on Clark's behalf had they been asked. Lavan's affidavit avers that he observed Clark using "Vitablend" as a "supplement in protein drinks," and that he helped transfer the supplement into plastic bags Clark gave to the informant and later turned over to federal agents. Supp. App. 65–66. Baker and Hallas's affidavits aver that they helped Clark order Vitablend about a year before the events giving rise to his indictment.

Notwithstanding their support for Clark, none of these potential witnesses testified at either of the evidentiary hearings conducted by the District Court. Clark's trial counsel, however, did testify, and stated that he interviewed both Lavan and Baker, but did not recall anything about Hallas. The Court's decision to credit trial counsel's testimony that he investigated these potential witnesses is therefore not clearly erroneous.[4] We also agree that counsel had tactical reasons for not calling these witnesses. Clark's post-arrest statements implicated Lavan as the source of the (fake) ephedrine, which severely undercut Lavan's value as a defense witness. Baker and Hallas's testimony about events in 2007 would have been minimally probative about Clark's activities in 2008, and only tangentially relevant to whether he believed the fake ephedrine to be real. Moreover, trial counsel testified that, with respect to Baker and Hallas, "a couple witnesses . . . did not

---

[4] We also note that when a district court holds an evidentiary hearing on a § 2255 motion, parties must do more than just submit affidavits when the facts are in dispute, as "contested fact issues in section 2255 cases cannot be resolved on the basis of affidavits alone." *Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1077 (3d Cir. 1985).

want to get involved, and I believe that they made that decision fairly close in time to the trial date." App. 507.[5]

*     *     *

For the reasons stated, we will affirm the District Court's order.

---

[5] As to Rolfing, there is no evidence of record establishing what his testimony would have been. Clark's pro se motion mentions a forthcoming affidavit from Rolfing, but no such affidavit was submitted. Nor did Rolfing testify during Clark's evidentiary hearings. Accordingly, Clark's argument regarding Rolfing's potential testimony amounts to "mere speculation" insufficient to sustain a claim of ineffective assistance of counsel. *Gray*, 878 F.2d at 712.