NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2936
_____

NICHOLAS EDWARDS,
Appellant

v.

SUPERINTENDENT FOREST SCI;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE COMMONWEALTH OF THE STATE OF
PENNSYLVANIA

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 2:15-cv-05615)
District Judge: Honorable Gerald A. McHugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 23, 2020
_____

Before: CHAGARES, GREENAWAY, JR. and NYGAARD, *Circuit Judges*.

(Opinion Filed: March 5, 2021)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Appellant Nicholas Edwards appeals from the District Court's denial of his petition seeking the issuance of a writ of habeas corpus based on ineffective assistance of counsel. For the reasons that follow, we will affirm.

I.  **BACKGROUND**

On the evening of July 4, 2003, while standing in front of a house in Philadelphia, Edwards shot Xavier Edmonds. Travis Hendrick and Walter Stanton—the witnesses the prosecution presented at trial—both identified Edwards by name to police within hours of the shooting. Both witnesses knew Edwards prior to the night of the shooting.

Edwards was arrested shortly thereafter. Following his arrest, Edwards went to trial by jury in Pennsylvania state court. Hendrick and Stanton testified during the trial. Hendrick testified that, a few days before the shooting, he was standing in front of a house with Edmonds when Edwards, in an effort to protect his drug territory, attacked Hendrick and Edmonds with a baseball bat and warned them to "stay off his block." J.A. 377. Hendrick further testified that on the day of the shooting, he was standing in front of the same house with Edmonds and several others, including Stanton. Hendrick left the group and started up the steps of the house to use the bathroom, when the sound of slamming brakes caused him to turn around. When he looked back, Hendrick saw Edwards climb out of the backseat of a silver car, with a gun, and walk towards the victim. Upon seeing

Edwards with the gun, Hendrick ran to the back exterior of the house. He heard gunshots and called the police.

Stanton, the prosecution's other witness, testified that he was standing outside of the house with a group of people, including Edmonds, when Edwards drove up in a car, pulled out a gun from his waistband, and yelled to Edmonds "You think I'm playing," before shooting Edmonds twice. J.A. 445. After the shooting, Stanton walked down the street, where he encountered police, who questioned him about the shooting.

The jury found Edwards guilty of first-degree murder, carrying a firearm without a license, possessing an instrument of crime, and criminal conspiracy.

Following an unsuccessful direct appeal, Edwards sought relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9524 *et seq.* Counsel was appointed for Edwards, and an amended PCRA petition was submitted on his behalf, limited to only two issues, neither of which are at issue on this appeal.[1] Following an evidentiary hearing on those issues, the PCRA Court dismissed the petition. The Superior Court affirmed, and the Pennsylvania Supreme Court denied the allowance of appeal.

Edwards filed a timely *pro se* petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, raising twenty-one claims, including

---

[1] In the amended PCRA petition, Edwards' PCRA counsel only raised two claims: (1) trial counsel was ineffective for failing to call an alibi witness at trial; and (2) his right to a prompt trial under Rule 600 of the Pennsylvania Rules of Criminal Procedure was violated.

3

that trial counsel was deficient for failing to impeach Stanton with two police reports that were produced during discovery. As relevant to this appeal, one police report recounted a police officer's conversation with Stanton at the scene just after the shooting. The report indicates that Stanton stated that he saw a man get out of a silver car with a gun and walk toward the victim. Stanton also stated that he had turned the corner of the block before he heard the shots. The report notes that Stanton recounted that, after the shots were fired, he returned to the house and found Edmonds on the ground. This account directly contradicts Stanton's testimony that he remained at the scene after the shooting and his statement, "I seen [the shooting] with my own eyes." J.A. 470.

Regarding the second police report Edwards objects to his counsel not introducing at trial details of an interview by a different officer. That report states that the officer found a can of beer in a brown paper bag near the Edmonds' body, which Stanton[2] claimed was his. This report casts doubt on Stanton's testimony that he was not drinking alcohol at the time of the shooting.

The District Court denied Edwards' petition, finding, in part, that this ineffective assistance of counsel claim was procedurally defaulted. Edwards appealed, and this Court granted a certificate of appealability, limited only to issues concerning Edwards' claim of ineffective assistance of counsel for failing to impeach Stanton as a witness using the police reports.

---

[2] The police report refers to "Andre Stanton," which is the name Stanton falsely gave to police officers on the night of the shooting.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254.  We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.  We exercise plenary review over the District Court's decision because it did not hold an evidentiary hearing.  *Abdul-Salaam v. Sec'y of Pa. Dep't of Corr.*, 895 F.3d 254, 265 (3d Cir. 2018) (citing *Robinson v. Beard*, 762 F.3d 316, 323 (3d Cir. 2014)).  Because the state court never reached the merits of Edwards' claims, we review the merits *de novo*.  *Jacobs v. Horn*, 395 F.3d 92, 110–111 (3d Cir. 2005).

## III.    DISCUSSION

Edwards asserts that he is entitled to habeas relief because trial counsel was deficient for failing to cross-examine Stanton with prior inconsistent statements made to police officers on the night of the shooting.[3]  Edwards contends that he suffered prejudice because the jury's verdict would have been different had it heard that Stanton told police officers that he did not see the victim being shot on the night of the crime.  Edwards avers that if Stanton had been impeached in this manner, the jury would have rejected all of Stanton's testimony as not credible and reached a not guilty verdict.

---

[3] The Government argues that this ineffective assistance of counsel claim has been waived; thus, procedural default applies, and such default is not excusable under *Martinez v. Ryan*, 566 U.S. 1 (2012).  While we acknowledge this procedural default issue is a close one, because Appellant's claims fail on the merits, we do not need to reach this question.  *See Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (determining it unnecessary to determine whether there was procedural default because "the claims in question lack merit.").

5

To succeed on his claim that trial counsel's assistance fell below the standard guaranteed by the Sixth and Fourteenth Amendments, Edwards "must demonstrate (1) that counsel's performance was deficient, in that it failed to meet an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We conclude that Edwards' ineffective assistance of counsel claim fails because he can not satisfy the second prong of the *Strickland* two-part test. *See* 466 U.S. at 687.

To satisfy the second *Strickland* prong and ultimately prevail on his ineffective assistance claim, Edwards must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To meet this threshold, we must find that "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 122 (2011) (citing *Strickland*, 466 U.S. at 693). Additionally, "[i]n making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.

Edwards argues that had the jury been presented with the impeachment evidence, the tenor of the trial would have changed, and he would have been acquitted. Nothing can be further from the reality of the situation. Edwards' trial counsel pursued an extensive

and fulsome cross-examination of both Stanton and Hendrick. Counsel highlighted the various discrepancies both during cross-examination and during closing.

Inconsistencies between Stanton's and Hendrick's testimony and other evidence were apparent. For instance, Stanton testified that Edwards pulled the gun from his waistband after exiting the car, while Hendrick testified that Edwards was waiving the gun from an open car window as the car approached the house. Hendrick testified that the car was silver, whereas Stanton initially claimed the car was a gray, before switching to metallic green. Stanton testified that the car "came up slow[ly], doing about five miles per hour," App. 449, in direct contradiction to Hendrick's claim that the slamming of the brakes caused him to turn around. Stanton also testified that the gun was pressed against Edmond when the shots were fired, while the medical examiner determined that the shots were fired from at least three feet away, Stanton testified that the victim was shot in the head, but, according to the medical examiner, the victim only had gunshot wounds to the neck, arm and torso.

Further undermining Stanton's testimony was the fact that he frequently contradicted himself and often claimed to be "confused" when these issues were brought out on cross-examination. For example, Stanton testified that he was merely four feet away from where the victim was shot, which was inconsistent with statement made to the police at the station that night, in which he said he was standing ten to twelve yards away. Stanton testified that he was "confused" about whether he witnessed two or three shots, even though he testified that he witnessed the shooting from a mere four feet away. Stanton also initially

7

claimed that he had seen Edwards come out of a gray car in his police statement, but then switched to claiming it was a metallic green car, before admitting, "I got my colors wrong." J.A. 474.

Edwards' trial counsel also presented a myriad of evidence undermining Stanton's credibility and showing that he was unreliable: Stanton was a drug dealer, with a criminal past; Stanton fled Philadelphia after the shooting; and Stanton gave his brother's name as his own on the night of the shooting. Edwards' counsel also insinuated that Stanton was testifying against Edwards to curry favor with law enforcement, especially in light of his active criminal charges and overdue child support obligations.

At closing, trial counsel reiterated many of these inconsistencies, and argued that there were "serious questions" as to "whether or not [Stanton] saw anything or whether or not he was really there, because his testimony [was] just so contradictory." J.A. 534.

Edwards now points to one inconsistency–whether Stanton saw the shooting occur– and claims that this discrepancy was the tipping point in convincing the jury that Stanton was not credible.[4] This argument is unpersuasive. Given the inconsistencies in Stanton's testimony, we cannot find that trial counsel's failure to impeach Stanton with this additional statement was prejudicial. Trial counsel thoroughly impeached Stanton at trial.

---

[4] Edwards' claims are based on statements made in two police reports, but Edwards focuses on the statement that Stanton did not see the shooting as the basis for prejudice.

8

The various contradictory statements certainly undermined Stanton's credibility with the jury.

Here, Stanton was also not the only witness to the shooting. While Edwards argues that Stanton is the only direct eyewitness to the actual shooting, Hendrick identified Edwards as the man who had previously attacked Edmond and got out of the car that night, gun-in-hand, shortly before he heard gunshots. As a result, even if counsel had cross-examined Stanton with the additional inconsistent statements, it is not reasonably probable that the outcome would have been different because of Hendrick's testimony and the other evidence presented during the trial (e.g., a 911 call and forensic evidence) was sufficient to allow the jury to conclude that Edwards committed the crimes he was accused of.

Edwards has not met his burden of showing that there was a reasonable probability that the outcome of his trial would have been different had trial counsel impeached Stanton with the police reports. Because we conclude that Edwards did not satisfy the prejudice prong of the *Strickland* standard, we need not address deficient performance prong. *See United States v. Travillion*, 759 F.3d 281, 294 (3d Cir. 2014) ("[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." (quoting *Marshall v. Hendricks*, 307 F.3d 36, 86–87 (3d Cir. 2002) (first alteration in original)). Therefore, Edwards' ineffective assistance of counsel claim fails.

**IV. CONCLUSION**

For the foregoing reasons, we will affirm the District Court's order denying habeas relief.